PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHRISTY BRZONKALA,
> *Plaintiff,*

and

UNITED STATES OF AMERICA,
> *Intervenor-Plaintiff-Appellee,*

v.

ANTONIO J. MORRISON; JAMES LANDALE CRAWFORD,
> *Defendants-Appellants,*

and

VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY; CORNELL D. BROWN; WILLIAM E. LANSIDLE, in his capacity as Comptroller of the Commonwealth,
> *Defendants.*

No. 00-2437

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CA-95-1358-7)

Argued: September 24, 2001

Decided: December 3, 2001

Before WIDENER, LUTTIG, and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge Luttig wrote the opinion, in which Judge Widener and Judge Motz joined.

---

**COUNSEL**

**ARGUED:** Hans Frank Bader, CENTER FOR INDIVIDUAL RIGHTS, Washington, D.C., for Appellants. Michael Eugene Robinson, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Michael E. Rosman, CENTER FOR INDIVIDUAL RIGHTS, Washington, D.C.; W. David Paxton, GENTRY, LOCKE, RAKES & MOORE, Roanoke, Virginia; Joseph Graham Painter, Jr., JOSEPH GRAHAM PAINTER, JR., P.C., Blacksburg, Virginia, for Appellants. Stuart E. Schiffer, Acting Assistant Attorney General, Robert P. Crouch, Jr., United States Attorney, Michael Jay Singer, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

LUTTIG, Circuit Judge:

Antonio J. Morrison and James L. Crawford successfully challenged the constitutionality of Subtitle C of the Violence Against Women Act. Morrison and Crawford now seek attorneys' fees against the United States pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA").

I.

In 1995, Christy Brzonkala filed a complaint in federal district court against Morrison and Crawford under Subtitle C of the Violence Against Women Act, 42 U.S.C. § 13981. After Morrison and Crawford moved to dismiss, the United States intervened to defend the constitutionality of Subtitle C. The Supreme Court ultimately held that Subtitle C exceeded Congress' powers under the Commerce Clause and Section 5 of the Fourteenth Amendment. *United States* v.

*Morrison*, 529 U.S. 598 (2000). Morrison and Crawford thereafter sought attorneys' fees against the United States pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(b). Their request was denied by the district court. *Brzonkala* v. *Virginia Polytechnic Inst. & State Univ.*, 115 F. Supp. 2d 677, 678 (W.D. Va. 2000).

II.

Section 2412(b) of EAJA provides, in relevant part as follows:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. *The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law* or under the terms of any statute which specifically provides for such an award.

(Emphasis added). Under the so-called American Rule, parties are generally responsible for their own attorneys' fees. *Alyeska Pipeline Serv. Co.* v. *Wilderness Soc'y*, 421 U.S. 240, 247 (1975). However, under the "common-benefit" doctrine, at common law, and hence, under EAJA, fees may be imposed on a class of individuals not participating in the litigation, that received "a substantial benefit" from that litigation and would have had to pay the fees had the members of the class themselves brought the suit. *Mills* v. *Electric Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970). Upon application of the common-benefit doctrine, fees are spread proportionately among the identified beneficiaries. *Id.* at 396-97. Traditionally, this doctrine has been applied in two types of cases: shareholder derivative suits, *see*, *e.g.*, *Mills*, 396 U.S. at 394-95, and suits by union members against unions, *see*, *e.g.*, *Hall* v. *Cole*, 412 U.S. 1, 8-9 (1973).*

---

*The "common-fund" doctrine is related to the common-benefit doctrine. It applies, as its name suggests, in cases where an actual common fund has been created as a consequence of the litigation. *See Mills*, 396 U.S. at 392-93.

In *Alyeska*, the Supreme Court articulated the requirements that a "class" must satisfy in order to recover fees under the common-benefit and common-fund doctrines:

> [1] the classes of beneficiaries [must be] small in number and [2] easily ascertainable. [3] The benefits [must be] traced with some accuracy, and [4] there [must be] reason for confidence that the costs [can] indeed be shifted with some exactitude to those benefitting.

*Alyeska*, 421 U.S. at 265 n.39. These requirements preclude recovery of attorneys' fees by those who "undertake[ ] to enforce statutes embodying important public values[,]" that is, those acting as private attorneys general. *Id.*; *see also* 10 *Moore's Federal Practice*, § 54.171[2][c] (3d ed. 1997) (noting that *Alyeska* "completely undermined" the application of the common-benefit doctrine against governmental entities).

Upon considering the defendants' request for attorneys' fees under the common-benefit doctrine, the district court held that defendants failed to show "the required nexus between litigation costs and a definite, ascertainable class of beneficiaries." *Brzonkala*, 115 F. Supp. 2d at 680. In so holding, the court rejected the defendants' contention that *Brewer* v. *School Board of the City of Norfolk*, 456 F.2d 943 (4th Cir. 1972), a case involving what we characterized as a "quasi-application of the 'common-fund doctrine,'" controlled to permit their recovery of fees. *Brzonkala*, 115 F. Supp. 2d at 680. We conclude that the district court did not abuse its discretion in denying defendants' motion to compel the United States to pay defendants' attorneys' fees.

A.

Morrison and Crawford identify, in their efforts to obtain fees from the government under the common-benefit doctrine, two different classes of individuals that allegedly benefitted substantially from the Supreme Court's decision in *Morrison*: first, all United States taxpayers, and, second, all individuals who were spared prosecution as a result of the Court's invalidation of VAWA's Subtitle C. Neither class satisfies the requirements of *Alyeska*.

As to the class of all taxpayers, such a class simply is not sufficiently "small in number and easily identifiable" to withstand scrutiny under *Alyeska*. 421 U.S. at 265 n.39. Permitting all United States taxpayers to comprise a legitimate class for purposes of the common-benefit doctrine would be tantamount to the award of fees to one who acted in the role of private attorney general. *See id.*; *see also Moore's Federal Practice*, § 54.171[2][c] (explaining that when the alleged class of beneficiaries under the common-benefit theory is the citizenry at large, the "private attorney general" theory and the "common-benefit" theory are "indistinguishable"). Unsurprisingly, several of our sister Circuits have already rejected like claims that the common-benefit doctrine allows assessment of fees against the United States when "the general citizenry or taxpayers constitutes the class of beneficiaries." *In re Hill*, 775 F.2d 1035, 1041-42 (9th Cir. 1985); *Grace* v. *Burger*, 763 F.2d 457, 459-60 (D.C. Cir. 1985) (affirming the denial of attorneys' fees, as against the United States, to a party who succeeded in obtaining an invalidation of a law on First Amendment grounds).

As to the class of individuals spared liability under Subtitle C as a result of the Supreme Court's decision in *Morrison* (even assuming it would be possible to identify such persons), imposing fees on the United States would not "shift [costs] with some exactitude to those benefitting," as required by *Alyeska*. 421 U.S. at 265 n.39. All federal taxpayers would bear the burden of fees, not merely the comparatively much smaller class of those who would otherwise have been prosecuted under Subtitle C.

## B.

Defendants attempt to evade *Alyeska* by relying on our decision in *Brewer*. In *Brewer*, the plaintiffs appealed a district court's approval of a school desegregation plan (asserting that the plan failed to provide free bus transportation to students living beyond walking distance to their school) and sought attorneys' fees from the defendant school board. After agreeing with the plaintiffs on the merits, we awarded attorneys' fees under what we termed a "quasi-application of the 'common fund' doctrine." *Id.* at 951. Concluding that the plaintiffs secured "a right of direct pecuniary benefit for all students assigned to schools within their neighborhood," *id.* (emphasis omit-

ted), we observed that, while we would ordinarily require other students to contribute their proportionate share of attorneys' fees, we would not do so in that case due to the "exceptional circumstances" present. *Id.* at 952.

The case *sub judice* lacks both features that we emphasized in *Brewer* were essential to our decision to assess fees against the school board. First, in *Brewer*, as we pointed out, there was the equivalent of a common fund created by the litigation, which consisted of moneys to be used for student transportation. *Id.* at 951. Second, the assessment of fees against the school board was, we concluded, "[t]he only feasible solution in this peculiar situation," *id.* at 952, because an assessment of fees against other students would defeat "the basic purpose of the relief . . . , which was to secure [free] transportation" for the students. *Id.* Even in the face of these circumstances, it is worth noting, we awarded fees against the school board only reluctantly. *Id.* at 951. But, in any event, neither of the two circumstances that prompted our fee award against the governmental entity in *Brewer* is present here. And there is simply no reason for a "quasi-application" of either the common-fund or the common-benefit doctrine of the type we indulged in that case. The invocation of *Brewer* to assess fees against the United States in this case would represent a significant extension of *Brewer*, to say the least.

## CONCLUSION

Because defendants have failed to show that assessment of attorneys' fees against the United States will spread the costs of litigation among a class of beneficiaries that meets the requirements for application of the common-benefit or common-fund doctrines as set forth by the Supreme Court in *Alyeska Pipeline Serv. Co.* v. *Wilderness Soc'y*, the district court did not abuse its discretion in denying defendants' motion for fees. Accordingly, the judgment of the district court is affirmed.

*AFFIRMED*