Robert DOE, et al., Plaintiffs,

v.

Elaine L. CHAO, Secretary of Labor, Defendant.

No. CIV.A.2:97 CV 43.

United States District Court, W.D. Virginia, Big Stone Gap Division.

Nov. 10, 2004.

Jerry Walker Kilgore, Sands Anderson Marks & Miller, Richmond, VA, Joseph A. Siciliano, Jr., Robrt J. Mottern, Mottern Fisher & Goldman, Atlanta, GA, Joesph E. Wolfe, Terry Gene Kilgore, Wolfe Williams & Rutherford, Norton, VA, for plaintiffs.

John F. Corcoran, Julie C. Dudley, U.S. Attorneys Office, Roanoke, VA, for defendant.

## MEMORANDUM OPINION

WILLIAMS, Senior District Judge.

### I. Statement of the Case

This case is before the court on plaintiffs' motion pursuant to the Privacy Act of 1974, 5 U.S.C.A. § 552a(g)(4)(B), and the Equal Access to Justice Act, 28 U.S.C.A. § 2412(b), seeking attorneys' fees for the prosecution of certain issues in their suit against the United States Department of Labor, ("the Department"), for its practice of listing social security numbers on black lung multi-captioned hearing notices.

### II. Background and Facts

Plaintiffs in this action are claimants who filed for benefits under the Department's black lung program. The record shows that Robert Doe filed suit against the Secretary of Labor, ("the Secretary"), on February 13, 1997, seeking to enjoin the Department's practice of listing claimants' social security numbers on black lung multi-captioned hearing notices. On February 18 and 19, 1997, the Secretary entered into an agreement stating that the Department would no longer disseminate social security numbers on black lung hearing notices. The court approved and signed the agreement on February 20, 1997. Later that day, six other Doe plaintiffs (Buck, Charles, Dick, Joe, Otis and Thomas) initiated six additional lawsuits in the Western District of Virginia seeking equitable relief and damages. These cases were subsequently consolidated with Robert Doe's lawsuit on June 4, 1997. Finally, in August 1997, the court granted Tays Doe leave to intervene in the suit.

In January 1998, plaintiffs filed a Motion to Show Cause seeking to hold the Secretary in contempt of court for violating the court order of February 20, 1997. The plaintiffs further filed notice of their intent to depose several administrative law judges, ("ALJ"), whose actions formed the basis of plaintiffs' contempt motion. In an order issued March 17, 1998, the court granted in part, denied in part, defendant's motion to stay discovery, defendant's motion to stay/cancel the Show Cause hearing and defendant's motion to stay the deposition of ALJ Sutton. The court stayed all other discovery pending its ruling on cross-motions for summary judgment. Finally, the court denied plaintiffs' motion to hold the Secretary in default.

On May 6, 1998, the court denied plaintiffs' motion to hold the Secretary in contempt after concluding she had substan-

tially complied with its decree to stop publishing social security numbers on multi-captioned hearing notices. On June 1, 1998, the court denied plaintiffs' motion to reconsider contempt sanctions.

During the spring of 1999, the parties' cross-motions for summary judgment and plaintiffs' Motion to Certify the Litigation as a Class Action were referred to the Magistrate Judge. By Report and Recommendation dated October 29, 1999, the Magistrate recommended that plaintiffs' motions be denied. The Magistrate further recommended that summary judgment be granted in favor of the Secretary on all of the claims except for the claim of Buck Doe.

On December 8, 1999, the court referred Plaintiffs' Motion to Amend Complaint and File Affidavits in Support of Damages to the Magistrate Judge. By Report and Recommendation dated May 24, 2000, the Magistrate recommended that plaintiffs' motion be denied.

On July 24, 2000, the court denied the plaintiffs' motion for class certification and entered summary judgment for the Secretary on the claims of all plaintiffs except for the claim of Buck Doe. The court granted summary judgment in Buck Doe's favor and awarded $1,000.00 in damages. Plaintiffs appealed the ruling granting summary judgment to the Secretary to the Fourth Circuit and the Secretary cross-appealed the court's award of summary judgment to Buck Doe. In the fall of 2000, while the appeals were still pending, the plaintiffs filed petitions for attorneys' fees under 28 U.S.C.A. § 2412(b) and 5 U.S.C.A. § 552a(g)(4), which the Secretary opposed.

The Fourth Circuit entered judgment on September 20, 2002, affirming the court's grant of summary judgment in favor of the Secretary and reversing the court's grant of summary judgment in favor of Buck Doe. The Court denied rehearing on No-vember 15, and, when the 90–day period for seeking certiorari passed on February 13, 2003, the judgment against all plaintiffs other than Buck Doe became final. Buck Doe petitioned for a writ of certiorari, which the Supreme Court granted. The Supreme Court affirmed the Fourth Circuit's ruling in favor of the Secretary on February 24, 2004. Pursuant to remand from the Supreme Court, this court entered judgment against Buck Doe on his claim for monetary damages on April 27, 2004. The court now must decide the plaintiffs' claims for attorneys' fees.

### III. Analysis

■ Attorneys' fees and costs may be awarded against the United States only when, under a particular statute, the government has waived its sovereign immunity. *See, e.g., Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) (citations omitted). Furthermore, waivers of sovereign immunity must be narrowly construed. *Library of Congress,* 478 U.S. at 318, 106 S.Ct. 2957. Plaintiffs' motion for attorneys' fees is based upon provisions contained in the Equal Access to Justice Act, ("EAJA"), and the Privacy Act of 1974. Plaintiffs argue that the EAJA provides for an award of attorneys' fees in this case under 28 U.S.C.A. § 2412(b). In the event that it does not, plaintiffs argue that they are entitled to an award of attorneys' fees pursuant to 5 U.S.C.A. § 552a(g)(4). The Secretary, however, argues that plaintiffs have failed to satisfy the requirements for recovery under § 2412(b). The Secretary further argues that, at most, only one of the plaintiffs has satisfied the requirements of § 552a(g)(4), and, in any event, such an award would be unreasonable.

### A. A Claim for Fees Pursuant to the Equal Access to Justice Act

■ Plaintiffs first contend that they are entitled to an award of attorneys' fees

and costs pursuant to 28 U.S.C.A. § 2412(b),[1] commonly known as the Equal Access to Justice Act. Section 2412(b) provides that:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C.A. § 2412(b). Thus, § 2412(b) sets forth a two-part test requiring a moving party to show that he is (1) a "prevailing party," and (2) that there is some common law or statutory basis for an award of attorneys' fees. The Secretary has stipulated in its brief that at least Robert Doe qualifies as a "prevailing party" under § 2412(b). However, the Secretary contends that plaintiffs' reliance on the "common-benefit" doctrine in an attempt to satisfy the common law basis for an award of fees under the EAJA on behalf of all plaintiffs is misplaced.[2] The court finds that the Secretary has the better side of the argument.

Under the so-called "American Rule," parties are generally responsible for their own attorneys' fees. *Alyeska*

*Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). However, under the "common-benefit" doctrine, at common law, and hence, under EAJA, fees may be imposed on a class of individuals not participating in the litigation that received "a substantial benefit" from that litigation and would have had to pay the fees had the members of the class themselves brought the suit. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393–94, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Upon application of the common-benefit doctrine, fees are spread proportionately among the identified beneficiaries. *Mills*, 396 U.S. at 396–97, 90 S.Ct. 616. The "theory is designed to avoid unjust enrichment of beneficiaries to a lawsuit who are not named plaintiffs." *Grace v. Burger*, 763 F.2d 457, 460 (D.C.Cir.1985). Toward that end, courts will apply the common-benefit doctrine only when the defendant is an entity that "represents" the benefited class. In order to qualify as a class under the common-benefit doctrine: (1) the classes of beneficiaries must be small in number; (2) easily ascertainable; (3) the benefits must be traceable with some accuracy; and (4) there must be reason for confidence that the costs can indeed be shifted with some exactitude to those benefiting. *Alyeska*, 421 U.S. at 265 n. 39, 95 S.Ct. 1612.

Traditionally, the common-benefit doctrine has been applied in two types of cases: shareholder derivative suits, *see, e.g., Mills*, 396 U.S. at 394–395, 90 S.Ct. 616, and suits by union members against

---

1. Plaintiffs do not seek attorneys' fees under 28 U.S.C.A. § 2412(d), which requires a court to make an award of attorneys' fees where a party substantially prevails and the government's position was not substantially justified, because they failed to file within 30 days of final judgment as required by § 2412(d)(1)(B).

2. Although the Administrative Procedure Act, ("APA"), 5 U.S.C.A. § 706(2)(a), provided the court with the authority to grant plaintiffs' request for injunctive relief, it does not provide a waiver of sovereign immunity for attorneys' fees. Therefore, the APA may not be used to satisfy the "statutory basis" requirement found in 28 U.S.C.A. § 2412(b).

unions, *see, e.g., Hall v. Cole,* 412 U.S. 1, 8–9, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). In *Mills,* the plaintiff was a shareholder who prosecuted a suit against the corporation to vindicate the rights of shareholders. *Mills,* 396 U.S. at 397, 90 S.Ct. 616. In holding the corporation liable for the plaintiff's fee, the court stated that in shareholder derivative suits courts allow the expenses of the suit to be spread among the shareholders by granting an award against the corporation. *Mills,* 396 U.S. at 394–395, 90 S.Ct. 616. Similarly, in *Hall,* a union was held liable for fees of one union member who sued the union to protect the rights of all union members. *Hall,* 412 U.S. at 8–9, 93 S.Ct. 1943. As in *Mills,* the award against the union treasury served to shift the burden on the benefited class. *Hall,* 412 U.S. at 8–9, 93 S.Ct. 1943.

█ In their efforts to obtain fees under the common-benefit doctrine, plaintiffs identify "all existing and future black lung claimants" as the benefiting class. Although it may be argued that "all existing black lung claimants" constitutes a small and easily ascertainable class, it cannot be shown that the costs can be shifted with some exactitude to those benefiting. In this case, if plaintiffs were allowed to exact fees from the Secretary, the burden would be shared by all federal taxpayers, not just those who have and will file black lung claims. This result is supported by the *Alyeska* court's findings that "these [class] requirements preclude recovery of attorneys' fees by those who 'undertake to enforce statutes embodying important public values[,]' that is, those acting as private attorneys general." *Alyeska,* 421 U.S. at 265 n. 39, 95 S.Ct. 1612.; *see also* 10 *Moore's Federal Practice,* § 54.171(2)(c)(3d ed.1997) (noting that *Alyeska* "completely undermined" the application of the common-benefit doctrine against governmental entities).

This ruling is further supported by the Fourth Circuit's holding in *Brzonkala v. Morrison,* 272 F.3d 688 (4th Cir.2001). In *Brzonkala,* the plaintiff sued the defendants under the Violence Against Women Act, ("VAWA"), 42 U.S.C.A. § 13981. The defendants challenged the constitutionality of Subtitle C of the VAWA, and the United States intervened to defend its validity. After the Supreme Court ruled Subtitle C unconstitutional, the defendants sought attorneys' fees from the United States under 28 U.S.C.A. § 2412(b) and the common-benefit doctrine. The defendants identified those individuals who would be spared liability under Subtitle C as the class of beneficiaries required under *Alyeska. Brzonkala,* 272 F.3d at 691. The court rejected this argument, stating that "(assuming it would be possible to identify such persons) imposing fees on the United States would not 'shift [the cost] with some exactitude to those benefiting,' as required by *Alyeska." Brzonkala,* 272 F.3d at 692. "All federal taxpayers would bear the burden of fees, not merely the comparatively much smaller class of those who would otherwise have been prosecuted under Subtitle C." *Brzonkala,* 272 F.3d at 692.

Applying the standards set forth above, the court finds that plaintiffs have failed to satisfy the requirements necessary for the application of the common-benefit doctrine. Therefore, because plaintiffs are unable to satisfy the common law or statutory basis requirement of 28 U.S.C.A. § 2412(b), they are not entitled to an award of attorneys' fees under the EAJA.

### B. A Claim for Fees Pursuant to the Privacy Act of 1974

█ Plaintiffs' second argument for an award of attorneys' fees and costs is based upon the Privacy Act of 1974. The Privacy Act creates several causes of action for violation of its provisions and further authorizes attorneys' fees for plaintiffs who

prevail under certain causes of action. The four causes of action for which attorneys' fees are provided are set forth in § 552a(g)(1). The first, (g)(1)(A), authorizes suit when a government agency refuses "to amend an individual's record in accordance with his request;" the second, (g)(1)(B), authorizes suit if an agency refuses improperly to permit an individual access to his records; the third, (g)(1)(C), authorizes suit if an agency fails to maintain accurate records and an individual is disadvantaged by a government determination based on those records; and the fourth, (g)(1)(D), authorizes suit where an agency fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual. Plaintiffs' suit against the Secretary was based on the Department's violation of 5 U.S.C.A. § 552a(g)(1)(D). 5 U.S.C.A. § 552a(g)(4) states:

> In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of:
>
> (A) actual damages sustained by the individual ·as a result of the· refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
> (B) the costs of the action together with reasonable attorney fees as determined by the court.

Plaintiffs argue that they have satisfied the statutory requirements for recovery of attorneys' fees set forth in §§ 552a(g)(1)(D) and 552a(g)(4). The Secretary argues, however, that only Buck Doe has arguably satisfied the requirements ·for an award of attorneys' fees, and in his case, such an award would be ·unreasonable. The court finds that only Buck Doe has satisfied the requirements for an award of attorneys' fees under § 552a(g)(4).

First, in order to maintain a suit under § 552a(g)(1)(D), a plaintiff must show both that (1) the Secretary has failed to comply with some provision of the Privacy Act, and (2) that the plaintiff has suffered an adverse effect as a result. Here, the Secretary conceded early on that its dissemination of black lung claimants' social security numbers on hearing notices ran afoul of the Privacy Act. However, only Buck Doe has made the required showing that he suffered an adverse effect as a result. *See Doe v. Chao,* 306 F.3d 170 (4th Cir. 2002) (affirming the district court's grant of summary judgment for the Secretary with regard to actual damage claims of plaintiffs other than Buck Doe, because no appellant other than Buck Doe showed any adverse effect stemming from the violation of the Privacy Act). Therefore, because the plaintiffs other than Buck Doe failed to satisfy the adverse effect requirement of § 552a(g)(1)(D), they may not seek recoupment of fees under § 552a(g)(4)(B).

Buck Doe's quest for attorneys' fees, however, is not at an end. Here, the parties have conflicting interpretations of § 552a(g)(4). As the court already has noted, § 552a(g)(4) states:

> In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of:
>
> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and

(B) the costs of the action together with reasonable attorney fees as determined by the court.

5 U.S.C.A. § 552a(g)(4).

In its prior proceedings, this court found, and the Secretary did not dispute, that the Secretary's acts in violating the Privacy Act were intentional and willful. Relying on the plain language of the statute, plaintiffs argue that they are now entitled to a recovery of costs and attorneys' fees. The Secretary, however, reads the statute differently. She argues that because Buck Doe failed to recover money damages, he may not collect attorneys' fees. She argues that the "sum" of actual damages and attorneys' fees presupposes that an award of both would occur. And, since the Supreme Court ruled that Buck Doe was not entitled to an award of statutory damages, he is not entitled to recover attorneys' fees either.

A survey of statutory attorneys' fees provisions reveals varying language used to describe the degree of success necessary for recovery.[3] Thus, basic questions arise concerning Congressional intent. In applying these various terms, the Supreme Court has instructed that "similar attorney's fee provisions should be interpreted *pari passu* ...," or equally. *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 691, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) (citing *Northcross v. Memphis City Schools Bd. of Ed.*, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973)).

 If identical or similar provisions are to be applied consistently, a question arises as to whether by employing varying terms Congress contemplated that each formulation would be governed by its own separate standard, or whether, instead, some overarching statutory purpose and common elements impliedly compel a uniform rule in some aspects of application despite textual variations in the statutes. *See Union of Needletrades, Indus. and Textile Employers, AFL–CIO, CLC v. INS*, 202 F.Supp.2d 265, 270 (S.D.N.Y.2002). This question introduces the interplay of several canons of statutory interpretation. First, absent unambiguous contrary expression, legislative provisions must be accorded the clear meaning of the ordinary language terms they employ. *See 271 Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (noting that in construing statutes, the Supreme Court assumes that Congress "intends the words in its enactments to carry 'their ordinary, contemporary, common meaning'" (quoting *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979))). Second, there is a presumption that in all enactments every choice of words is purposeful, manifesting legislative intent to convey particular meaning, and that statutory use of different terms evinces intent to express different meanings. *See Legacy Emanuel Hosp. & Health Ctr. v. Shalala*, 97 F.3d 1261, 1265 (9th Cir.1996) ("[T]he use of different language by Congress creates a presumption that it intended the terms to have different meanings.") (citing *Washington Hosp. Ctr. v. Bowen*, 795 F.2d 139,

---

**3.** For statutes limiting fees to "prevailing parties," *see, e.g.*, 5 U.S.C.A. § 504(a)(1) (1976 ed., Supp. V); 42 U.S.C.A. § 1988 (1976 ed., Supp. V). 12 U.S.C.A. § 2607(d)(5) (Real Estate Settlement Procedures Act);

For statutes limiting fees to "substantially prevailing" parties, see, *e.g.*, 5 U.S.C.A. § 552(a)(4)(E) (1976) (Freedom of Information Act); 5 U.S.C.A. §§ 552a(g)(2)(B), 552a(g)(3)(B) (Privacy Act); 5 U.S.C. § 552b(i) (Government in the Sunshine Act).

For statutes requiring that a party be successful, see 12 U.S.C.A. § 3417(a)(4) (Right to Financial Privacy Act); 15 U.S.C.A. § 298(c) (Jewelers' Hall–Mark Act).

146 (D.C.Cir.1986)); 2A Norman Singer, Statutes and Statutory Construction § 46.06 (6th ed.2000) (noting that legislative "use of different terms within related statutes generally implies that different meanings were intended"). Courts, therefore, are obliged to give effect to every clause and word of a statute, *see United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955), and to avoid reading legislation in a way that renders some words altogether redundant, *see Gustafson v. Alloyd Co.*, 513 U.S. 561, 574, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995).

Applying the first canon of construction, the court finds that the Secretary's interpretation of "sum" is not in accordance with the word's plain meaning. The word "sum" is normally used to describe the addition of numbers, here actual damages and attorneys' fees. *The American Heritage Dictionary, New College Edition* 1288 (1976). The Secretary's argument is analogous to saying that zero plus one is zero, rather than one. Therefore, a plain reading of the statute does not support the interpretation that attorneys' fees are contingent upon a recovery of actual damages. This finding is further supported by the legislative history of the Privacy Act, where a Senate bill proposing that awards of attorneys' fees be limited to those plaintiffs who succeeded in enforcing a liability against the Secretary was rejected.[4] *See* S. 3418, 93d. Cong., 2d Sess., § 303(c)(1974).

The court finds, therefore, that Buck Doe is entitled to reasonable attorneys' fees and costs because he has shown that he suffered an adverse effect due to the Secretary's intentional or willful violation of the Privacy Act as required by the plain language of §§ 552a(g)(1)(D) and 552a(g)(4).

The Secretary next argues that, even if Buck Doe satisfies the requirements of Section 552a(g)(4), a court may award only "reasonable attorneys' fees." They argue that because Buck Doe failed to obtain a monetary award in the suit, it would be unreasonable to award him attorneys' fees. This, of course, is nothing more than a restatement of the Secretary's previous argument that since Buck Doe failed to recover actual damages under § 552a(g)(4)(A) he is not entitled to an award of costs and attorneys' fees under (g)(4)(B). Here, the construction of other attorneys' fees provisions in the Privacy Act cuts against the Secretary's position. Under §§ 552a(g)(2)(B)—providing for attorneys' fees for violations of § 552a(g)(1)(A)—and § 552a(g)(3)(B)— providing for attorneys' fees for violations of § 552a(g)(1)(B), an award of costs and "reasonable" attorneys' fees is limited to those parties who "substantially prevail" in their action.[5] The language of § 552a(g)(4), however, makes no mention of any requirement that a party obtain some success on the merits. All that is required is that the party show that the agency's violation was intentional or willful.

---

**4.** The Senate bill's proposed wording of § 552a(g)(4)(B) read:"in the case of any successful action to enforce any liability under this section, [the court shall award] the costs of the action together with reasonable attorney's fees as determined by the court."

**5.** *See* 5 U.S.C.A. § 552a(g)(2)(B) ("the court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed"), and 5 U.S.C.A. § 552a(g)(3)(B) ("The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed.").

This fact introduces the second cannon of statutory construction, which requires a court to give effect to every clause and word of a statute, *see United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955), and to avoid reading legislation in a way that renders some words altogether redundant, *see Gustafson v. Alloyd Co.*, 513 U.S. 561, 574, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). The Secretary's reading of the statute would render the terms "substantially prevailed" and "reasonable" redundant, in that she reads "reasonable" attorneys' fees as requiring that a party achieve some success on the merits before he can recover. By the Secretary's reading, what one hand giveth, the other taketh away. Had Congress' intent been to limit recovery to those parties who obtain some success on the merits, however, it easily could have followed the same pattern it established in the preceding attorneys' fees provisions. Although the term "reasonable" may serve to reduce a party's recovery under § 552a(g)(4)(B), it should not serve to completely prohibit it.

Finally, the court notes its consideration of the Supreme Court's ruling in *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 684, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). In *Ruckelshaus*, the issue was whether 42 U.S.C.A. § 7607(f) allowed a court to grant attorneys' fees to a party that achieved no success on the merits. The Clean Air Act, as codified at 42 U.S.C.A. § 7607(f), provided that "in any judicial proceeding under this section, the court may award costs of litigation (including reasonable attorney and expert witness fees) *whenever it determines that such an award is appropriate.*" 42 U.S.C.A. § 7607(f) (emphasis added). Thus, the plaintiffs argued that the plain language of § 7607(f) allowed for an award of attorneys' fees to non-prevailing parties when a court deemed it appropriate.

The Court noted that "[b]efore we will conclude Congress abandoned this established principle that a successful party need not pay its unsuccessful adversary's fees … a clear showing that this result was intended is required." *Ruckelshaus*, 463 U.S. at 685, 103 S.Ct. 3274. The Court ultimately rejected plaintiffs' argument, finding that § 7607(f)'s rejection of the prevailing party requirement was actually "meant to expand the class of parties eligible for fee awards from prevailing parties to *partially prevailing* parties—parties achieving *some success*, even if not major success" on the merits. *Ruckelshaus*, 463 U.S. at 687, 103 S.Ct. 3274 (emphasis in original). The rejection of the term "prevailing party," therefore, was due to a lack of consistency among the courts as to who qualified as a prevailing party, rather than Congressional intent to allow attorneys' fees awards to non-prevailing parties. *Ruckelshaus*, 463 U.S. at 687, 103 S.Ct. 3274.

The court distinguishes *Ruckelshaus* from the case at hand in that § 552a does not exhibit the complete dismissal of the "prevailing party" standard as found in § 7607(f). In fact, a party's recovery of attorneys' fees under §§ 552a(g)(2)(B) and 552a(g)(3)(B) of the Privacy Act is contingent upon whether he "substantially prevailed" on the merits of the case. Accordingly, the court must interpret Congress's departure from the "substantially prevailed" requirement found in §§ 552a(g)(2)(B) and 552a(g)(3)(B) as evidencing an intent to provide for a recovery of attorneys' fees by non-prevailing parties.

## C. Award of Reasonable Attorneys' Fees

In determining the appropriate fee, this court is guided by a number of decisions of the United States Court of Appeals for the Fourth Circuit. *See McKittrick v. Gard-*

ner, 378 F.2d 872 (4th Cir.1967); *Redden v. Gardner,* 391 F.2d 670 (4th Cir.1968); *Whitt v. Califano,* 601 F.2d 160 (4th Cir. 1979): *Blankenship v. Schweiker,* 676 F.2d 116 (4th Cir.1982); *Ballard v. Schweiker,* 724 F.2d 1094 (4th Cir.1984). The establishment of reasonable attorneys' fees is primarily within the discretion of the district court. *See Ballard,* 724 F.2d at 1098. Each case must be considered on the basis of its individual facts and circumstances. *See Blankenship,* 676 F.2d at 118.

In determining which facts and circumstances are to be considered, the Fourth Circuit has adopted the 12 factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). Applying these factors in the context of social security and black lung fee cases, the court stated in *Blankenship* as follows:

> Although *McKittrick* [ ] was decided before the *Johnson* factors had been enunciated and adopted, it still provides guidance for the awarding of attorneys' fees in this type of case. The emphasis in *McKittrick* was upon the quantity and quality of the attorney's services as well as the contingency of the fee. Using the *Johnson* terminology we read *McKittrick* to emphasize: time and labor required; skill required; contingency of fee; amount involved and result attained; experience, reputation, and ability of attorney; and awards in similar cases. In a given case, of course, any of the other *Johnson* factors may also be of importance, particularly the novelty and difficulty of questions; time limitations; undesirability of the case; as well as the nature and length of the professional relationship.

676 F.2d at 118.

■■■ In their fee petitions, attorneys Wolfe, Williams & Rutherford seek $2,641.64 in expenses and $133,000.00 in attorneys' fees, based upon 528 hours of work at $250.00 per hour. Attorney Kilgore seeks $2,231.98 in expenses and $57,662.50 in attorneys' fees, based upon 312 hours of work at $175.00 per hour. Attorneys Mottern, Fisher & Goldman seek $1,446.12 in expenses and $30,192.50 in attorneys' fees, based upon 191.1 hours of work at hourly rates of $175.00 and $75.00.

First, the court accepts the submitted hourly rates as reasonable given the attorneys' experience, as well as the complexity and undesirability of the case. The court must, however, adjust the number of hours submitted by plaintiffs' attorneys in order to reflect the amount of work expended in the development and pursuit of only Buck Doe's claim. In this respect, the court reviewed the fee petitions in detail in order to locate those hours for which they may recover. The task proved difficult, however, as many of the entries were poorly documented. Eventually, the court was able to decipher the subject matter of most entries by cross-referencing each fee petitions with the other and the docket.

Upon determining the subject matter of the entries, the court struck those entries involving unrelated or unsuccessful claims, such as the original claim by Robert Doe, the various motions to intervene by subsequent plaintiffs, the motion to consolidate the claims, the motion to certify plaintiffs as a class, the motion to hold the Secretary in contempt, and the motion to amend the complaint and file affidavits. The court did, however, allow plaintiffs' to recover for their work in prosecuting and defending the parties' cross-motions for summary judgment.

By applying the aforementioned standards, the court awards attorneys Wolfe, Williams & Rutherford $161.40 in expenses and $39,312.50 in attorneys' fees. Attorney Kilgore is awarded $439.64 in expenses and $13,457.50 in attorneys' fees.

Attorneys Mottern, Fisher & Goldman, P.C., are awarded $47.18 in expenses and $4,102.75 in attorneys fees.

### V. Conclusion

For the foregoing reasons, I will award costs and attorneys' fees to plaintiff Buck Doe as detailed above, but deny them as to all other plaintiffs.

An appropriate order will be entered.