PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BUCK DOE,
             *Plaintiff-Appellee,*

and

ROBERT DOE; TAYS DOE; OTIS DOE;
THOMAS DOE; JOE DOE; CHARLES
DOE,                                              No. 06-2015
             *Plaintiffs,*

v.

ELAINE L. CHAO, Secretary of Labor,
             *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Virginia, at Big Stone Gap.
Glen M. Williams, Senior District Judge.
(2:97-cv-00043)

Argued: November 2, 2007

Decided: December 28, 2007

Before WILLIAMS, Chief Judge, and WILKINSON
and MICHAEL, Circuit Judges.

---

Reversed by published opinion. Judge Wilkinson wrote the opinion,
in which Chief Judge Williams and Judge Michael joined.

---

## COUNSEL

**ARGUED:** Anthony Alan Yang, Appellate Staff, Civil Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,

D.C., for Appellant. Joseph E. Wolfe, WOLFE, WILLIAMS & RUTHERFORD, Norton, Virginia, for Appellee. **ON BRIEF:** Peter D. Keisler, Assistant Attorney General, Washington, D.C.; John L. Brownlee, United States Attorney, Roanoke, Virginia; Michael Jay Singer, Appellate Staff, Civil Division, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C., for Appellant.

---

**OPINION**

WILKINSON, Circuit Judge:

This case has been appealed to us twice before. This time, we are asked to decide whether the district court's July 2006 award of attorneys' fees to Buck Doe under the Privacy Act, 5 U.S.C. § 552a(g)(4)(B), violated the mandate we issued the last time this case was before us. Because the district court's decision was directly contrary to the mandate of this court, we reverse.

I.

Because this is the court's third opinion in this case, *see Doe v. Chao*, 435 F.3d 492 (4th Cir. 2006); *Doe v. Chao*, 306 F.3d 170 (4th Cir. 2002), we must set forth briefly some procedural history. The series of cases leading to this appeal all trace back to a consent order entered against the Secretary of Labor in 1997. On February 13, 1997, Robert Doe, a black lung benefit claimant, filed suit against the Secretary under the Privacy Act, which prohibits, as a general matter, federal agencies from disclosing "any record" of an individual in an agency "system of records" without that individual's consent. 5 U.S.C. § 552a(b) (2000). The Secretary acknowledged that in reproducing Social Security numbers on multi-captioned hearing notices for black lung benefits claimants, the DOL had run afoul of the limits set by the Privacy Act. *See* 5 U.S.C. § 552a(b).

On February 20, 1997, the Secretary stipulated to a district court consent order in Robert Doe's case, requiring that the DOL stop using Social Security numbers on its multi-captioned hearing notices in black lung cases. That same day, six additional Doe plaintiffs —

including appellee Buck Doe (who was not a party to the consent order) — filed six separate lawsuits in the Western District of Virginia, seeking both equitable relief and monetary damages under the Privacy Act. *See Doe v. Chao*, 346 F.Supp. 2d 840, 842-43 (W.D.Va. 2004) (summarizing the case history). On June 4, 1997, these six lawsuits were consolidated with Robert Doe's suit. The seven claimants continued to press for monetary damages and also sought certification of a class of every black lung benefit claimant who had applied for benefits since the passage of the Privacy Act.

Following entry of the consent order, the DOL undertook numerous steps to ensure compliance. However, some Social Security numbers, including that of Buck Doe, were inadvertently revealed. In January 1998, Buck Doe and other plaintiffs moved to hold the Secretary in civil contempt for violating the consent order. In May 1998, the district court denied the motion, and held that the Secretary had "substantially complied with [the earlier consent] order regarding the existence of social security numbers on multi-captioned hearing notices." In June 1998, the district court denied plaintiffs' motion to reconsider contempt sanctions. *See Doe v. Chao*, 346 F.Supp. 2d at 843.

In July 2000, on cross-motions for summary judgment, the district court denied class certification, and granted summary judgment in favor of the Secretary for all claimants except Buck Doe, to whom the district court granted summary judgment and awarded $1,000 in statutory damages. *See Doe v. Herman*, 2000 WL 34204432 (W.D.Va. July 24, 2000) ("*Doe I*"). Before any appellate proceedings began on *Doe I*, the three counsel who represented the Doe plaintiffs filed three separate motions in district court in September and October 2000 seeking attorneys' fees under the Privacy Act for work performed through September 12, 18, and 21, 2000.

On cross-appeals, this court affirmed the district court's grant of summary judgment in favor of the Secretary, but reversed the district court's grant of summary judgment in favor of Buck Doe. *Doe v. Chao*, 306 F.3d 170, 185 (4th Cir. 2002) ("*Doe II*"). As to Buck Doe's claim, we remanded for entry of judgment in favor of the Secretary, on the grounds that the plain language of the Privacy Act precluded Buck Doe from recovering statutory damages because he (like all the

other Doe plaintiffs) had not proven actual damages. *Doe II*, 306 F.3d at 184-85. The Supreme Court granted certiorari, and affirmed this court's judgment. *Doe v. Chao*, 540 U.S. 614 (2004) ("*Doe III*"). In April 2004, pursuant to remand from the Supreme Court, the district court entered judgment in favor of the Secretary on Buck Doe's claim for monetary damages.

In July 2004, after the Secretary prevailed in the Supreme Court, Buck Doe and the other plaintiffs moved for attorneys' fees and costs under both the Privacy Act, 5 U.S.C. § 552a(g)(4)(B) and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(b) (2000). Plaintiffs did not supplement the attorney time records that they had previously submitted with their original fee motions in September and October 2000.

In November 2004, the district court denied all plaintiffs' requests for fees under the EAJA, and denied fees under the Privacy Act to all plaintiffs except Buck Doe. *Doe v. Chao*, 346 F.Supp. 2d 840, 843-49 (W.D. Va. 2004) ("*Doe IV*"). Although the district court specifically denied Buck Doe's attorneys' fee request for work done on numerous "unrelated or unsuccessful claims," including Buck Doe's "motion to hold the Secretary in contempt," the district court awarded him $57,520.97 in attorneys' fees and costs under the Privacy Act for work performed "in prosecuting and defending the parties' cross-motions for summary judgment." *Doe IV* 346 F.Supp. 2d at 850.

The Secretary appealed the award of Privacy Act fees to Buck Doe, but Buck Doe did not appeal the denial of attorneys' fees for the contempt proceedings or under the EAJA. In January 2006, this court vacated the fee award on the grounds that "the district court failed to determine the reasonableness of Doe's attorney fee award in light of the fact that Doe recovered no damages." *Doe v. Chao*, 435 F.3d 492, 507 (4th Cir. 2006) ("*Doe V*"). Because Doe "failed to recover any monetary award," and because "his underlying litigation was largely unsuccessful," we noted that "it is unlikely that Doe may recover significant attorney fees." *Doe V*, 435 F.3d at 506. Noting that the district court was "in the best position" to determine a reasonable attorneys' fee, we remanded to the district court for reconsideration of its fee award, emphasizing that "the most critical factor in determining the reasonableness of a fee award is the degree of success

obtained." *Id.* at 506 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

On remand, the district court did not award any fees for the work performed by Buck Doe on the cross-motions for summary judgment. *Doe v. Chao*, No.2:97CV00043, 2006 WL 2038442, at *5 (W.D. Va. July 19, 2006) ("*Doe VI*"). However, the district court awarded Buck Doe $5,887.50 in attorneys' fees for work performed on the contempt motion, justifying its reversal of course on the grounds that the contempt motion "served an important public purpose." *Id.* (relying upon *Mercer v. Duke Univ.*, 401 F.3d 199 (4th Cir. 2005)). The district court also, *sua sponte* and without explanation, awarded Buck Doe $10,000 for work performed on the appellate phase of the merits litigation. *Doe VI*, 2006 WL 2038442, at *5.

The Secretary now appeals the decision of the district court in *Doe VI*.

## II.

The threshold question is whether the district court's July 2006 judgment in *Doe VI* violated the mandate of this court in *Doe V*. We review *de novo* whether a post-mandate judgment of the district court "contravenes the mandate rule, or whether the mandate has been 'scrupulously and fully carried out.'" *S. Atlantic Ltd. P'ship of Tenn. v. Riese*, 356 F.3d 576, 583 (4th Cir. 2004) (quoting 2A Fed. Proc., L.Ed. § 3:1016)).

The mandate rule is a "more powerful version of the law of the case doctrine." *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414 (4th Cir. 2005); *see also LaShawn A. v. Barry*, 87 F.3d 1389, 1393 n.3 (D.C. Cir. 1996) (en banc). "Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'" *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). "The principle that a district court may not violate the mandate of a circuit court of appeals and may not alter the law of the case so established is basic." *United States v. Henry*, 709 F.2d 298, 306 (5th Cir. 1983) (citing cases). Indeed, "[i]n its earliest days, [the Supreme Court] consistently held that an inferior court has

no power or authority to deviate from the mandate issued by an appellate court . . . . The rule of these cases has been uniformly followed in later days." *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948) (citing cases).

The mandate rule prohibits lower courts, with limited exceptions, from considering questions that the mandate of a higher court has laid to rest. *See Sprague*, 307 U.S. at 168. "When matters are decided by an appellate court, its rulings, unless reversed by it or a superior court, bind the lower court." *Ins. Group Comm. v. Denver & Rio Grande W. R.R. Co.*, 329 U.S. 607, 612 (1947).

The mandate rule likewise restricts the district court's authority on remand from the court of appeals. First, "any issue conclusively decided by this court on the first appeal is not remanded," and second, "any issue that could have been but was not raised on appeal is waived and thus not remanded." *United States v. Husband*, 312 F.3d 247, 250-51 (7th Cir. 2002); *see also S. Atl. Ltd. P'ship of Tenn.*, 356 F.3d at 584 (stating that the mandate rule prohibits district courts from "reconsider[ing] issues the parties failed to raise on appeal").

The mandate rule serves two key interests, those of hierarchy and finality. "A rule requiring a trial court to follow an appellate court's directives that establish the law of a particular case is necessary to the operation of a hierarchical judicial system." *Mirchandani v. United States*, 836 F.2d 1223, 1225 (9th Cir. 1988). It is axiomatic that in our judicial hierarchy, the decisions of the circuit courts of appeals bind the district courts just as decisions of the Supreme Court bind the circuit courts: "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106 (2000). The principle of hierarchy is no empty shell. It protects the very value and essential nature of an appeal, namely the chance afforded litigants for review of a judgment and for correction, generally by a larger judicial body, of errors that may have serious consequences or work significant injustice.

This is not to say appellate courts are somehow superior or always correct, but only that our system has been served well by the availability of review and the need for appropriate review to be final. The mandate rule in fact "serves the interest of finality" in litigation. *See, e.g., United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007); *United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003). "Repetitive hearings, followed by additional appeals, waste judicial resources and place additional burdens on . . . hardworking district and appellate judges." *O'Dell*, 320 F.3d at 679 (internal quotation marks omitted). If no appeal of a judgment is taken, or if the appellate court determines questions put before it, the orderly resolution of the litigation requires the district court to recognize those interests served by final judgments and to implement the appellate mandate faithfully.

III.

A.

The district court violated the mandate rule in this case by awarding attorneys' fees to Buck Doe for (1) work performed on the contempt proceedings, and (2) work performed on the appellate phase of the merits litigation.[1] In *Doe V*, this court instructed the district court to determine the reasonableness of Buck Doe's attorneys' fee award under the Privacy Act,[2] in light of the fact that Buck Doe recovered no damages. *Doe V*, 435 F.3d at 506-507. In that regard, the district court did as instructed, concluding that Buck Doe was not entitled to any fees under the Privacy Act. Doe VI, 2006 WL 2038442, at *5. But the district court improperly went further and addressed two matters that were not before it for consideration, in clear violation of this court's mandate in *Doe V*.

---

[1]Because we find that the mandate of this court precludes the award of attorneys' fees to Buck Doe, we need not reach the question of whether the attorneys' fees awarded here were permissible or reasonable.

[2]When we refer to the fees awarded under the Privacy Act, we mean the fees the district court awarded for work performed by Buck Doe "in prosecuting and defending the parties cross-motions for summary judgment." *Doe IV* at 850.

First, the mandate of this court did not permit the district court to award Buck Doe attorneys' fees for work performed on the contempt motion. In 2004, the district court rejected Buck Doe's request for fees for his unsuccessful "motion to hold the Secretary in contempt," *Doe IV*, 346 F.Supp. 2d at 850, and Buck Doe did not appeal that ruling. At that point, the denial of fees for work performed on the contempt motion became final. Because the mandate rule "forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived," the district court was not free to deviate from this court's mandate by reconsidering Buck Doe's claims for attorneys' fees that it had denied before appeal and that had not been raised by Buck Doe on cross-appeal. *Bell*, 5 F.3d at 66; *see also, e.g., S. Atl. Ltd. P'ship of Tenn.*, 356 F.3d at 584.

Second, the scope of the remand of this court in *Doe V* did not permit the district court to broach the entirely new issue of whether Buck Doe was entitled to an award of attorneys' fees for work performed on the earlier appellate phase of the merits litigation. Buck Doe never even requested fees for the appellate phase of the merits litigation that concluded with the Supreme Court's decision in February 2004. *Doe III*, 540 U.S. 614. In fact, after the Supreme Court affirmed the decision of this court in *Doe III*, Buck Doe and the other Doe plaintiffs filed a motion for attorneys' fees that did not include documentation of hours worked on the appellate phase of the merits litigation. Given that Buck Doe never requested fees for appellate work at that or any other time, he clearly waived any such claim. Indeed, because of Buck Doe's waiver, the Secretary had no opportunity to litigate the issue, and the district court likewise had no proper basis to make an award. The district court was not free to use this court's remand on a totally separate issue as an opportunity to breathe life into Buck Doe's long abandoned claim.

This court remanded in *Doe V* for the limited purpose of requiring the district court to assess the reasonableness of Buck Doe's fee award under the Privacy Act for work performed on summary judgment. Once the district court determined that the reasonable fee for that work was zero, the mandate rule required that it go no further.

## B.

We are not persuaded by Buck Doe's argument that two exceptions to the mandate rule permitted the district court to award fees for work

performed on the contempt motion and the earlier appellate phase of the merits litigation. "Deviation from the mandate rule is permitted only in a few exceptional circumstances, which include (1) when 'controlling legal authority has changed dramatically'; (2) when 'significant new evidence, not earlier obtainable in the exercise of due diligence, has come to light'; and (3) when 'a blatant error in the prior decision will, if uncorrected, result in a serious injustice.'" *Invention Submission Corp.*, 413 F.3d at 415 (quoting *Bell*, 5 F.3d at 67)). Here, Buck Doe argues that our decision in *Mercer v. Duke University*, 401 F.3d 199, constitutes a dramatic change in legal authority, and that the district court's refusal in *Doe IV* to award fees for work performed on the contempt proceedings was a blatant error which, if left uncorrected, would result in serious injustice. *See Brief of Appellee* at 13-14. It is clear that neither of these exceptions applies here.

First, Buck Doe argues that this court's decision in *Mercer* represented a "dramatic change in the law governing the award of attorney's fees . . . ." Because this court in *Doe V* instructed the district court to determine the "reasonableness" of Buck Doe's attorneys' fees in light of *Mercer*, Buck Doe contends that this court's mandate "can be reasonably interpreted to permit the district court to reopen the issue of attorneys' fees." *Brief of Appellee* at 13; *see Doe V*, 435 F.3d at 506 n.19.

This court's decision in *Mercer*, however, did not represent a dramatic change in legal authority. In *Mercer*, we held that it was not an abuse of discretion for the district court to have awarded attorneys' fees to a plaintiff who had obtained only nominal damages in a Title IX discrimination action. 401 F.3d at 212. In so holding, we simply recognized that the Supreme Court's decision in *Farrar v. Hobby*, 506 U.S. 103, — which held that a plaintiff who only recovers nominal damages generally will not be entitled to an award of attorney's fees — does not preclude the possibility that such a plaintiff may be entitled to a fee award in some rare cases. *Mercer*, 401 F.3d at 203. We then went on to apply the factors set forth by Justice O'Connor in her concurrence in *Farrar* to conclude that *Mercer* presented an "unusual case that d[id] warrant an award of attorney's fees." *Mercer*, 401 F.3d at 203-04. Our decision in *Mercer* was thus not a dramatic change in legal authority, but simply an application of the Supreme Court's 1992 decision in *Farrar*.

Moreover, our decision in *Mercer* was issued in March 2005, nearly a year before we handed down the opinion in *Doe V*. The parties even addressed *Mercer* in their briefs in the *Doe V* appeal. Given that *Mercer* was squarely before this court in *Doe V*, it can hardly constitute a justification for the district court to go beyond our instructions on remand.

Second, Buck Doe argues that the district court was free to ignore this court's mandate on remand because its refusal to award fees for the contempt proceedings constituted "a blatant error that, if left uncorrected," would result in "serious injustice." *Brief of Appellee* at 14. To agree with Buck Doe would be to allow the exception to swallow the rule. There is no "serious injustice" in denying fees for the contempt proceedings when that work did not result in a contempt order against the Secretary, monetary damages under the Privacy Act, or any other relief whatsoever for Buck Doe. Further, there is no "serious injustice" when Buck Doe did not even challenge either the district court's 1998 denial of the contempt motion or the district court's 2004 denial of fees for the work performed in the contempt proceedings. *See Doe IV*, 346 F.Supp.2d at 843, 850**.** Finally, there is no "serious injustice" in denying attorneys' fees for work performed in the earlier appellate litigation when Buck Doe did not even request such fees.

## IV.

Even litigation spawning multiple Roman numeral suffixes must come to an end. Here, the case should have ended with the district court's finding that no fee award was appropriate under the Privacy Act. By reopening other long-settled issues on remand, the district court inappropriately prolonged this already tortuous litigation. Accordingly, the judgment of the district court must be

*REVERSED.*