PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

BUCK DOE,

*Plaintiff-Appellee,*

and

ROBERT DOE; TAYS DOE; OTIS DOE; THOMAS DOE; JOE DOE; CHARLES DOE; DICK DOE,

*Plaintiffs,*

v.

ELAINE L. CHAO, Secretary of Labor, *Defendant-Appellant.*

No. 05-1068

Appeal from the United States District Court
for the Western District of Virginia, at Big Stone Gap.
Glen M. Williams, Senior District Judge.
(CA-97-43-2)

Argued: October 25, 2005

Decided: January 24, 2006

Before LUTTIG, WILLIAMS, and MICHAEL, Circuit Judges.

---

Affirmed in part; vacated and remanded in part by published opinion. Judge Williams wrote the majority opinion, in which Judge Luttig joined. Judge Michael wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Anthony Alan Yang, UNITED STATES DEPARTMENT OF JUSTICE, Civil Division, Appellate Section, Washington, D.C.,

for Appellant. Terry Gene Kilgore, WOLFE, WILLIAMS & RUTH-
ERFORD, Norton, Virginia, for Appellee. **ON BRIEF:** Peter D.
Keisler, Assistant Attorney General, John L. Brownlee, United States
Attorney, Michael Jay Singer, Appellate Staff, Civil Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellant. Joseph E. Wolfe, Bobby Steve Belcher, WOLFE,
WILLIAMS & RUTHERFORD, Norton, Virginia, for Appellee.

---

**OPINION**

WILLIAMS, Circuit Judge:

In 1997, appellee, Buck Doe, brought an action against appellant,
the United States Secretary of Labor (the Government), seeking dam-
ages under the Privacy Act for the wrongful disclosure of his Social
Security number. We previously held — based on a reading of the
Act's text — that a party must show some actual damages in order
to recover $1,000 in statutory damages. That decision was affirmed
by the United States Supreme Court and we remanded to the district
court, where the court granted Doe's motion for attorney fees and
costs. Neither the Supreme Court's opinion nor our original opinion
addressed the separate question presented today, which is whether a
person who cannot show actual damages under the Act may still
recover costs and reasonable attorney fees. We now affirm the district
court's conclusion that Doe is entitled to costs and reasonable attor-
ney fees even though he suffered no actual damages. Because, how-
ever, we conclude that the district court did not properly calculate the
amount of attorney fees, we reverse the district court's judgment and
remand the case for further proceedings in light of this opinion.

I.

Because this is the second time this case is before us, we only
briefly recite the pertinent facts and procedural history.

Like most applicants for benefits under the Black Lung Benefits
Act, Doe provided his Social Security number to the Department of
Labor's Office of Workers' Compensation Programs. The Govern-

ment, in order to facilitate the processing of black lung claims, used applicants' Social Security numbers as unique identifiers. The Social Security numbers were often reproduced to other applicants, their employers, and counsel, and were frequently included in published administrative law decisions.

Robert Doe, who was also a Black Lung benefit claimant, filed suit against the Secretary of Labor on February 13, 1997. The Government promptly recognized that in reproducing Social Security numbers in such a way, it exceeded the limits set by the Privacy Act. *See* 5 U.S.C.A. § 552a(b) (West 1996 & Supp. 2005). On February 20, 1997, the Government stipulated to a district court consent decree in Robert Doe's case prohibiting future publication of black lung benefit applicants' Social Security numbers. Later that day, Doe and five other claimants initiated six separate lawsuits seeking equitable relief and money damages under the Privacy Act. *See Doe v. Chao*, 346 F. Supp. 2d 840, 842 (W.D. Va. 2004) (*Doe IV*) (summarizing case history).[1] These lawsuits were consolidated with Robert Doe's suit on June 4, 1997, and the seven claimants sought monetary damages for violations of the Privacy Act, as well as certification of the class of every Black Lung benefit claimant who applied for benefits since the passage of the Act.

The parties filed cross-motions for summary judgment and on July 24, 2000, the district court denied the plaintiffs' motion for class certification and granted summary judgment in favor of the Government for all claimants except Doe. *Doe v. Herman*, No. Civ.A. 2:97CV00043, 2000 WL 34204432 (W.D. Va. July 24, 2000) (*Doe I*). The court also granted summary judgment in favor of Doe and awarded him $1,000.00 in statutory damages despite the fact that Doe suffered no actual damages. *Id.* at *4.

The parties cross-appealed and we affirmed the district court's grant of summary judgment in favor of the Government and reversed the district court's grant of summary judgment in favor of Doe. *Doe*

---

[1]We will refer to the four previous opinions in this case sequentially as *Doe I*, *Doe II*, *Doe III*, and *Doe IV*, with *Doe I* as the initial district court opinion, *Doe II* as our first opinion, *Doe III* as the Supreme Court's opinion, and *Doe IV* as the district court opinion currently under review.

*v. Chao*, 306 F.3d 170 (4th Cir. 2002) (*Doe II*). We held that because Doe could not show actual damages, the plain language of the Privacy Act precluded him from obtaining an award of statutory damages. *Id.* at 177.

The Supreme Court granted certiorari to decide whether "some actual damages must be proven before a plaintiff may receive the minimum statutory award" under the Privacy Act. *See Doe v. Chao*, 124 S.Ct. 1204, 1206 (2004) (*Doe III*). The Supreme Court affirmed the judgment of this Court on February 24, 2004, holding that Doe was not entitled to an award of statutory damages because he failed to show any actual damages. *Id.* at 1212.

After the Supreme Court's decision, the case was remanded to the district court, where Doe made a motion for attorney fees and costs under 5 U.S.C.A. § 552a(g)(4)(B) of the Privacy Act, which the district court granted. *Doe IV*, 346 F. Supp. 2d at 851. The district court reasoned that both the language of the statute and Congressional intent favored recovery of costs and fees by a party who did not recover any actual damages as long as the party could show an adverse effect caused by an intentional or willful violation. *Id.* at 847-48. Because the district court concluded that Doe's earlier suit established that he was adversely affected by the Government's intentional or willful violation, it awarded him $57,520.97 in costs and attorney fees. *Id.* at 850-51.

The Government timely appealed, arguing that when a party is unable to show actual damages, he or she is also precluded from recovering costs and fees. The Government bases its argument on (1) the plain text of the Privacy Act, (2) language from the Supreme Court's opinion in *Doe III*, and (3) canons of construction. In the alternative, the Government argues that the only "reasonable" attorney fee in this case is no fee at all.

## II.

We review de novo the district court's legal determination that § 552a(g)(4) of the Privacy Act permits a party who does not recover actual damages to recover costs and attorney fees. *See In re Coleman*, 426 F.3d 719, 724 (4th Cir. 2005) ("A ruling concerning the proper

interpretation of a statute is a legal determination, which we review de novo."). As always, we begin our analysis with the text of the statute. *See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins.*, 514 U.S. 645, 655 (1995) (noting that "we begin as we do in any exercise of statutory construction with the text of the provision in question").

Section 552a(g)(4) provides:

> In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
>
> (A)   actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
> (B)   the costs of the action together with reasonable attorney fees as determined by the court.

5 U.S.C.A. § 552a(g)(4).Subsection (g)(1)(D), under which Doe's suit is maintained, authorizes individuals to bring a civil action for the government's failure to comply with the Privacy Act when that failure causes an "adverse effect on [the] individual."[2]

The text of §§ 552a(g)(1)(D) and (g)(4) clearly provide that (1) if an individual can show an *adverse effect* (2) caused by the Govern-

---

[2]The full text of § 552a(g)(1)(D) provides:

Civil Remedies — Whenever any agency

(D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C.A. § 552a(g)(1).

ment's *intentional or willful* breach of the statute, (3) the Government *shall be liable* to that individual for the *sum* of (a) actual damages *and* (b) the *costs and reasonable attorney fees* of the action. It is undisputed that Doe suffered an adverse effect caused by the Government's intentional or willful violation of the Privacy Act. Under a plain reading, then, the Government is liable to Doe for the sum of his actual damages *and* costs and fees.

The Government, however, argues that the plain language of the statute shows that § 552a(g)(4) authorizes an award of attorney fees and costs only to parties who can show actual damages. In particular, the Government argues that the term "sum" means "that liability exists only if damages are established." (Appellant's Br. at 21.) We find the Government's argument without merit.

The word "sum" — as it is used in this instance — requires a court to fulfill the simple act of adding actual damages and fees and costs once the *preceding* elements of the statute are satisfied. *See Webster's II New Riverside University Dictionary* 1160 (1988) (defining sum as "[t]he total obtained as a result of adding").[3] Thus, subsection (g)(4)(B) acts independent of subsection (g)(4)(A). In other words, the statute does not require a showing of actual damages under (g)(4)(A) in order to receive costs and reasonable attorney fees under (g)(4)(B). If a court determined actual damages to be $0.00 and costs and reasonable attorney fees to be $1,000.00, for example, *as a mathematical matter* the *sum* of those two numbers is $1,000.00. Likewise, if actual damages were determined to be $1,000.00 and costs and fees were $0.00, the sum would again be $1,000.00. In short, the fact that one of two numbers might be zero does not prove that when added to another number, the sum of the two numbers must also equal zero. The word "sum" requires us to engage in addition, not multiplication.[4]

---

[3]The word "sum" can also be defined as "an amount of money." *Webster's II New Riverside University Dictionary* 1160 (1988). That definition, on the other hand, is the most plausible one for the word's use in subsection (g)(4)(A). *See* 5 U.S.C.A. § 552a(g)(4)(A) (stating that a person who is entitled to actual damages shall not "receive less than the sum of $1,000").

[4]The Government suggests that in reading the term "sum" to suggest its ordinary, mathematical meaning, we are leaving the term "with no job

Thus, because Doe suffered an adverse effect caused by the Government's intentional or willful violation of the Act, the Government is liable to Doe for actual damages plus costs and reasonable attorney fees. The face of the statute leaves no room for confusion on this point.[5]

### III.

When the language of a statute fairly can be understood to have only one, specific reading — as is the case with § 552a(g)(4)(B) — that fact would ordinarily signal the end of our discussion. *See Dodd v. United States*, 125 S.Ct. 2478, 2483 (2005) ("When the statute's language is plain, the sole function of the courts — at least where the

---

to do" in the Act. *See Doe III*, 124 S.Ct. at 1210 (rejecting statutory reading that leaves terms "with no job to do" because the use of the term would "accomplish[ ] nothing"). This argument, however, begs the question of how the statute must be read if we remove the term "sum" from the Act. It is not enough to argue that each word of a statute must be given effect; the Government must also show that a plausible contrary reading exists.

In any event, we disagree with the Government's argument that if the statute is to be read as we suggest it must, Congress "could have simply drafted § 552a(g)(4) to provide that 'the United States shall be liable to the individual in an amount equal to [ ]' actual damages and costs with attorney's fees and removed the phrase 'the sum of' from the Act." (Appellant's Br. at 21.) Requiring a court to discern the "amount of" of damages and costs and fees still requires a court to add the "amount of" damages and the "amount of" costs and fees in order to calculate the total. If the Government would have more support for its argument under its hypothetical statute than it does under the actual statute, then, it is because the suggested redrafting does more than simply remove the word "sum" from the Act. Rather, it alters the entire structure of § 552a(g)(4). Under the actual text and structure of the statute, the inclusion of the term "sum," *combined with the separating of damages in one subsection and costs and fees in another*, together clarify that those two amounts must be determined independent of one another and then added together.

[5]This is not to say that all of the statute's provisions and components are clear. We recognize that the question we decided in *Doe II* was a difficult one, just as there might be difficult questions of statutory interpretation presented by Privacy Act litigation in the future. Under the question that we decide today, however, the statute has no ambiguity.

disposition required by the text is not absurd — is to enforce it according to its terms." (internal quotation marks omitted)). There are, however, two reasons to pause in this instance. First, the Government argues that language in the Supreme Court's *Doe III* decision effectively decides this case in its favor. Second, a result that grants costs and attorney fees to a party who does not recover monetary damages is quite unusual, and as the Supreme Court has previously noted, "[b]efore we will conclude Congress abandoned [the] established principle that a successful party need not pay its unsuccessful adversary's fees . . . a clear showing that this result was intended is required." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983).

A.

The Government's argument that the Supreme Court's decision in *Doe III* precludes the holding we would reach based on the plain reading of the statute is primarily based on *Doe III*'s (1) reading of the term "liable" in the Act, (2) footnote 9, and (3) discussion of what completes a cause of action. We disagree with the Government's reading of *Doe III*.

1.

In *Doe III*, the Supreme Court noted that "the statute does not speak of liability (and consequent entitlement to recovery) in a free-standing, unqualified way, but in a limited way, by reference to enumerated damages." *Doe III*, 124 S.Ct. at 1209. In other words, the phrase "entitled to recovery" in subsection (g)(4)(A) informs the nature of the Government's liability. A showing of an adverse effect and willfulness means not just that the Government is generally "liable;" rather, the Government is liable for something specific. Here, the Government is liable for the sum of (1) actual damages and (2) costs and reasonable attorney fees.

The Government interprets the Supreme Court's above-quoted language, however, to mean that "[o]nly when a plaintiff proves [actual] damages as an element of his merits claim will the United States become 'liable' for damages and the accompanying costs and fees." (Appellant's Br. at 19.) It is unclear why the Government reads this language from *Doe III* — which was concerned entirely with

§ 552a(g)(4)(A), not 552a(g)(4)(B) — to have any implication on costs and attorney fees. In fact, in no place did the Court in *Doe III* purport to interpret § 552a(g)(4)(B). Instead, the Government's rephrasing should have stopped a few words short, as a proper interpretation of the Supreme Court's language is the more obvious one: that only when a plaintiff proves actual damages with his merits claim will the United States become liable for actual damages[6] — or the statutory damage amount that replaces actual damages.

The Government's argument fails to recognize that the statute separates damages from costs and fees in two different subsections and requires courts to add the two amounts when liability attaches. That such liability attaches upon a showing of an adverse effect and that the violation was intentional or willful is clear from the statute's text. Once such liability attaches, the Government is liable for actual damages (if there are any) plus costs and reasonable attorney fees (if there are any). The Supreme Court's phrase, then, means nothing more than the obvious fact that *the Government cannot be liable for actual damages if there are no actual damages.*

2.

The Government also argues that *Doe III*'s footnote 9 rejects any analysis that fails to treat actual damages as the recovery entitling a plaintiff to costs and attorney fees. Again, we disagree with the Government.

Footnote 9 was a response to a specific argument put forth in dis-

---

[6]In fact, the Supreme Court explicitly recognized this point not only in terms of the statute's text, but also in terms of traditional tort recovery. The Court noted that "Doe's manner of reading 'entitle[ment] to recovery' as satisfied by adverse effect caused by intentional or willful violation is in tension with more than the text, however." *Doe III*, 124 S.Ct. at 1209. The Court then cited *Prosser and Keeton on the Law of Torts* for the proposition that Doe's reading was "at odds with the traditional understanding that tort recovery requires not only wrongful act plus causation reaching to the plaintiff, but proof of some harm for which damages can reasonably be assessed." *Id.* (citing W. Keeton et al., *Prosser and Keeton on the Law of Torts* § 30 (5th ed. 1984)).

sent by Judge Michael in *Doe II*. In his dissent, Judge Michael recognized that the statute's text "allows for a plaintiff who has proven an intentional or willful violation of the Privacy Act to recover costs and reasonable attorney fees even if the plaintiff has suffered no actual damages at all." *Doe II*, 306 F.3d at 188-89 (Michael, J., dissenting in part). This recognition was nothing more than a restatement of the plain meaning of the statute. Judge Michael went on, however, to argue that the majority erred in concluding that "a person is not 'entitled to recovery' [under (g)(4)(A)] even though the United States is liable to that person for costs and attorney fees [under (g)(4)(B)]." *Id.* at 189. The majority in *Doe II* rejected this interpretation because it did "not believe that Congress would have invoked a term whose definition is dependent upon a subsequent statutory provision," and, in the context of § 552a(g)(4)(A), which concerns damages, "'recovery' is not plausibly read to reference litigation costs in the absence of any underlying compensable injury." *Id.* at 179.

In footnote 9, the Supreme Court also rejected Judge Michael's argument. The Supreme Court understood Judge Michael to argue "that any plaintiff who can demonstrate that he was adversely affected by intentional or willful agency action is entitled to costs and reasonable attorney's fees under 5 U.S.C. § 552a(g)(4)(B), and is *for that reason* 'a person entitled to recovery' [of actual damages] under subsection (g)(4)(A)." *Doe III*, 124 S.Ct. at 1211 n.9 (emphasis added). The Court then dismissed the argument because "[i]nstead of treating damages as a recovery entitling a plaintiff to costs and fees, . . . this analysis would treat costs and fees as the recovery entitling a plaintiff to minimum damages; it would get the cart before the horse." *Id.* In other words, even assuming that Doe is entitled to attorney fees, it would be a mistake to conclude that an award of fees makes Doe a "person entitled to recovery" of actual damages under subsection (g)(4)(A). By so holding, the Supreme Court did not attempt to address in dicta whether Doe was entitled to attorney fees, but instead confined its inquiry to the issue before it; that is, whether Doe would be "entitled to recover" monetary damages *because* he incurred attorney fees.[7]

---

[7]If, as the Government argues, the Supreme Court had wished to assert in dicta that fees are never allowed absent a showing of actual damages,

### 3.

The Government next argues that *Doe III* requires a showing of actual damages in order for a plaintiff to have a cause of action under subsection (g)(4). Although the Supreme Court's language may be subject to different interpretations, we do not believe it can be interpreted in the manner suggested by the Government.

In *Doe III*, the Court responded to Doe's argument that "it would have been illogical for Congress to create a cause of action for anyone who suffers an adverse effect from intentional or willful agency action, then deny recovery without actual damages." *Doe III*, 124 S.Ct. at 1210. Justice Souter's opinion noted that subsection (g)(1)(D)'s language "recognizing a federal 'civil action' on the part of someone adversely affected" does not alone create a complete cause of action. *Id.* There must also be "proof of intent or willfulness in addition to adverse effect, and if the specific state of mind must be proven additionally, it is equally consistent with logic to require some actual damages as well." *Id.* at 1210-1211. Accordingly, then, "an individual subjected to an adverse effect has injury enough to open the courthouse door, but without more has no cause of action for damages under the Privacy Act." *Id.* at 1211.

---

one would think the Court's opinion would have stated the proposition as such. Although it would have been dicta just the same, *Doe III* easily could have rejected Judge Michael's interpretation by noting that Doe was categorically not entitled to attorney fees because he could not show actual damages, and thus there was no recovery of costs and attorney fees to even act as a "recovery" under 552a(g)(4)(A). This, of course, is not what the Supreme Court stated.

In his dissent, Judge Michael contends that we avoid confrontation with footnote 9. *See post* at 25. As our discussion reveals, however, we do not ignore the footnote or dismiss it as dicta. Moreover, the footnote is only dicta if it is misread to state the proposition that Judge Michael suggests. Without the gloss added by our good dissenting colleague and the Government, footnote 9's language stands for the simple proposition that a legitimate award of costs and fees cannot transform Doe into a "person entitled to recovery" of actual damages under subsection (g)(4)(A). If it could, of course, we would be left with the cart before the horse.

The Government argues that this language stands for the proposition that actual damages are *part of* the underlying cause of action and that by failing to show actual damages, Doe may not now recover costs and fees. We disagree. We understand the Supreme Court's language as stating what must be shown (or proved) in order to *prevail* under the cause of action created by subsection (g)(4) in order to be entitled to the remedy delineated in (g)(4)(A). In other words, in order to succeed on the underlying cause of action *and* be entitled to a *remedy* of actual damages, a litigant must show actual damages. Because he could not show actual damages, Doe was *not entitled to monetary relief* for the violation of the underlying cause of action that Congress created with the Privacy Act.

The Government and Judge Michael's dissent read far too much into one single paragraph of the Supreme Court's *Doe III* opinion while simultaneously ignoring longstanding precedent. To accept the Government's reading would be to conflate the underlying cause of action with the remedy provided. The Government's argument suggests that relief is part of the underlying cause of action. This is not so. Such a reading fails to recognize traditional jurisprudential understandings of causes of actions.[8]

In *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court detailed the history of the phrase "cause of action," and recognized that traditionally the phrase refers "roughly to the alleged invasion of recognized legal rights upon which a litigant bases his claim for relief." *Id.* at 237 (internal quotation marks omitted). In other words, "[t]he concept of a 'cause of action' is employed specifically to deter-

---

[8]Judge Michael's dissent contends that the relationship between implied causes of action and express causes of action are "tangential at best." *Post* at 26. Yet, Judge Michael fails to explain why the *meaning* of a "cause of action" changes based on whether a cause of action is first enunciated by Congress or the Court. In fact, and as Judge Michael implicitly recognizes, "because Congress has *expressly* empowered plaintiffs to bring private suits for money damages under the Privacy Act," *post* at 26, our task is easier because we need only look to Congress's *express* language to determine *which litigants are empowered* to bring a cause of action *for appropriate relief*, or in other words, money damages.

mine who may judicially enforce the statutory rights or obligations." *Id.* at 239. The *Davis* court noted that "the question of whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive." *Id.* Moreover, the Court recognized that it is possible for a plaintiff to "have a cause of action even though he be entitled to no relief at all." *Id.* at 239 n.18. Therefore, a cause of action is not connected to "the quality or extent" of *injury*, but instead concerns whether the plaintiff belongs to a class of litigants that may use the courts to enforce a *right*.[9] *Id.*; *see also Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 30 (1979) (noting that the question of "whether a cause of action exists" is distinct from "the question of the nature of relief available in such an action"); *cf. Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) ("To prevail under a cause of action set out in [29 U.S.C.] § 2617, an employee must prove, as a threshold matter, that the employer violated [29 U.S.C.] § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation.").

In the case of § 552a(g)(4), then, Congress created a cause of action for a class of litigants who are adversely affected by the Government's intentional or willful violation of the Privacy Act. In order to prevail — or be entitled to monetary relief — under subsection (g)(4)(A), a litigant must show actual damages.[10] If there are no actual

---

[9]To be sure, at first blush, the few sentences in *Doe III* concerning this question appear to favor the Government's reading. It must be remembered, however, that "[a] 'cause of action' may mean one thing for one purpose and something different for another." *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 67-68 (1933). In fact, the complexity and confusion attached to the phrase "cause of action" was one of the main reasons "that the authors of the Federal Rules of Civil Procedure eschewed it altogether," instead requiring that a complaint contain a short and plain statement of the "claim." *Davis v. Passman*, 442 U.S. 228, 237 (1979). Nonetheless, if one thing is certain, it is that an entitlement to relief is not part of an underlying cause of action.

[10]Judge Michael's dissent mixes and matches different portions of Justice Souter's opinion in *Doe III* in an attempt to rewrite Congress's express text, redraft the Supreme Court's actual language, and reconcep-

damages, of course, a litigant is entitled to none. Just the same, however, in order to prevail — or be entitled to relief — under subsection (g)(4)(B), a litigant must show that he incurred costs and reasonable attorney fees. But the cause of action itself is provided to those litigants who are adversely affected by the Government's intentional or willful violation of the Privacy Act.[11] The Government's argument, on

---

tualize the meaning of a cause of action. He claims that the Supreme Court cited *Prosser and Keeton on the Law of Torts* in order to support the "'traditional understanding' of tort causes of action," *post* at 27, and that our neglect of this portion of the Supreme Court's analysis explains our "erroneous conclusion" that a remedy is not part of an underlying cause of action. The reason that we do not cite the Supreme Court's language detailing how the "traditional understanding of tort causes of action" informs our decision here, however, is because such language does not exist.

As we noted in footnote 6, the *Doe III* language that Judge Michael relies on is concerned with what a litigant must show in order to be *entitled to recovery* under the Act. In other words, and as we have often stated throughout this opinion, in order to recover damages under subsection (g)(4)(A) of the Act, a litigant must show that he suffered some actual damages. But the Supreme Court never speaks of the "traditional understanding of tort causes of action." Instead, to quote the Supreme Court, it speaks of the "traditional understanding [of] tort *recovery*." *Doe III*, 124 S.Ct. at 1209 (emphasis added). And of course, relief — or recovery stemming from the underlying cause of action — is distinct from the cause of action itself. Finally, even if there remained any doubt, the language that Judge Michael invokes stems from Part III of the Supreme Court's opinion, which concerned Doe's primary argument that any person who shows an adverse effect caused by the Government's intentional or willful violation is a person entitled to *recovery* under subsection (g)(4)(A). *See id.* It is not until Part IV, however, when *Doe III* cleans up the "loose ends," that the opinion addresses the underlying Privacy Act cause of action. *See id.* at 1210.

[11]We can envision a statute where Congress makes a showing of damages part of an underlying cause of action, but it would be an odd statute. For example, if § 552a(g)(4) instead read, "when a court determines that the agency acted in a manner which was intentional or willful, *and a litigant suffers actual damages*, the United States shall be liable for the amount of actual damages," it would be arguable that the showing of damages was part of the cause of action because a litigant would not have a statutory right under the Act unless she suffered actual damages. The actual statute at issue here, of course, was not written this way.

the other hand, "mirrors the very misunderstanding over the difference between a cause of action and the relief afforded under it that [the Supreme Court] attempted to clarify in *Davis*."[12] *Franklin v. Gwinnett County Pub. Schools*, 503 U.S. 60, 69 (1992).

In short, we find nothing in the Supreme Court's *Doe III* opinion that trumps the plain meaning of the statute.

## B.

The Government argues that aside from *Doe III*, we must also interpret § 552a(g)(4)(B) through the lens of two canons of statutory construction. First, it suggests that statutory grants of the right to recover attorney fees and costs must be construed strictly in favor of the sovereign. Second, the Government argues that § 552a(g)(4) does not amount to a "clear showing" of congressional intent to depart from the rule that a prevailing party need not pay a non-prevailing party's litigation costs and fees.[13]

---

[12]The incorrectness of the Government's argument is perhaps best underscored when the argument is taken to its logical conclusion. Because under the Government's reading, actual damages — under (g)(4)(A) — make up part of the underlying cause of action, a showing of costs and attorney fees — under (g)(4)(B) — would also make up a necessary component of the cause of action. This is because subsections A and B are structural equals in the text of the statute. Therefore, if A is part of the cause of action, B must also be part of the cause of action. We cannot accept an argument that would require the conclusion that a litigant who does not incur costs and reasonable attorney fees has no cause of action under the Act.

[13]The Government realizes that these canons would be of most use to us only if we found that the statute was less than "clear in requiring that a . . . plaintiff recover some damages before he can obtain an award of costs and fees." (Appellant's Br. at 25.) We, of course, hold that the text of the statute is unmistakably clear, but our holding results in a conclusion opposite from the one urged by the Government: a plaintiff need not show actual damages in order to obtain an award of costs and fees. Thus, as we shall detail, these canons serve little value in this case because we are interpreting an unambiguous, clear statutory provision. *See Connecticut v. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (noting that "canons of construction are no more than rules of thumb that help courts determine the meaning of legislation" and when a statute is unambiguous on its face, no further canons need be consulted).

1.

The Government correctly recognizes that the scope of the government's waiver of sovereign immunity must be strictly construed in favor of the sovereign. *Lane v. Pena*, 518 U.S. 187, 192 (1996). Moreover, "[i]t is well-settled that attorneys' fees may be assessed against the United States *only when* it has waived its sovereign immunity by statute." *O'Brien v. Moore*, 395 F.3d 499, 503 (4th Cir. 2005) (internal quotation marks and alterations omitted). Thus, we will conclude that Congress intended to waive the government's sovereign immunity for an award of attorneys' fees only when Congress expresses such intent *unambiguously*. *See id.* (noting the Court's task of determining whether Congress' waiver of immunity for fees in civil actions unambiguously extends to habeas proceedings).

In examining § 552a(g)(4)(B), we find no ambiguity in Congress' waiver. As we noted in Part II, *supra*, we believe the text of this statute as it relates to Doe's quest for attorney fees is clear. Our conclusion that the statute, on its face, undoubtedly allows for Doe to recover an award of attorney fees could not have been made without a simultaneous recognition that the statute also unambiguously waives the government's immunity and makes it liable to Doe for costs and fees. The statute permits of no other reading.

2.

In *Ruckelshaus*, the Supreme Court noted that "requiring a defendant, completely successful on all issues, to pay the unsuccessful plaintiff's legal fees would be a radical departure from long-standing fee-shifting principles adhered to in a wide range of contexts." 463 U.S. at 683. Relying on *Ruckelshaus*, the Government argues that in order for Doe's attorney fee award to stand, we must find that Congress made a "clear showing" of its intent to abandon the principle that non-prevailing parties may not recover costs and attorney fees. *See id.* at 685.

*Ruckelshaus* concerned a provision of the Clean Air Act, which permitted a court to "award costs of litigation (including reasonable attorney and expert witness fees) *whenever [the court] determines that such an award is appropriate*." *Id.* at 682-83 (emphasis in origi-

nal). In the underlying case, the Sierra Club was unsuccessful in its attacks against an EPA regulation, but the D.C. Circuit nonetheless granted the Club attorney fees because their briefs and arguments were helpful to understanding a very complex issue. *See Sierra Club v. Gorsuch*, 672 F.2d 33, 41 (D.C. Cir. 1982). The Supreme Court reversed the D.C. Circuit's decision, concluding that Congress included the word "appropriate" in the statute in order to ensure that a party who was completely unsuccessful on the merits would not be able to recover costs and fees. *Ruckelshaus*, 463 U.S. at 686. Ultimately, the Court concluded that the provision lacked a clear showing from Congress, which was needed in order for "a party who wrongly charges someone with violations of the law . . . to force [a] defendant to pay the costs of the wholly unsuccessful suit against it." *Id.* at 685.

*Ruckelshaus* does not aid the Government here. The Clean Air Act provision at issue in *Ruckelshaus* was meaningfully different from the Privacy Act provision here. The provision at issue in *Ruckelshaus* allowed the award of costs and reasonable fees when "appropriate." Other statutes have similar language, allowing for fee-shifting either when "appropriate" or "in the interest of justice." *See, e.g.*, 15 U.S.C.A. § 2072(a)(West 1998)(stating that in addition to damages in a suit under the Consumer Product Safety Act, a litigant may recover costs and reasonable attorneys' fees "if the court determines it to be in the interest of justice"). Notably, however, Congress took a decidedly different path under § 552a(g)(4)(B) and did not condition the award of costs and reasonable fees on whether a court found them to be "appropriate" or "in the interest of justice."[14] Instead, Congress attached no qualifications, only requiring an intentional or willful violation that causes an adverse effect. Moreover, in *Doe I*, the district court found that Doe suffered an adverse effect from the Government's intentional violation of the Privacy Act. The Government was found to have violated the Privacy Act, but Doe suffered no actual damages because of that violation. Thus, unlike the Sierra Club in *Ruckelshaus*, Doe is not an example of "a party who wrongly charges someone with violations of the law." *Ruckelshaus*, 463 U.S. at 685.

---

[14]Although both provisions require that any award of attorney fees be "reasonable," that term has a distinct meaning that is addressed in Part IV, *infra*.

In addition, because the statute is unambiguous, it necessarily makes a clear showing that plaintiffs — under circumstances like Doe's — should recover costs and reasonable attorney fees. By declining to include any qualifying phrase like "appropriate" or "in the interest of the justice," Congress created an explicit statutory scheme that has the potential of making the Government liable for costs and reasonable fees even when the Government is not liable for actual damages. Although this scheme may produce atypical results, it is not the province of the courts to alter plain congressional text that does not offend the Constitution; instead, we must take Congress at its word. *See Connecticut v. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then . . . judicial inquiry is complete.").[15]

As it relates to attorney fees and costs, and given the Supreme Court's interpretation in *Doe III*, § 552a(g)(4) is a clear statute. It makes the Government liable for costs and reasonable attorney fees when the Government intentionally or willfully violates the Privacy Act and that violation causes the litigant an adverse affect. Moreover, it does so unambiguously and without qualification.

---

[15]Moreover, because other subsections — not at issue here — of § 552a(g) require a claimant to "substantially prevail" before a fee award is appropriate, *see* 5 U.S.C.A. § 552a(g)(2)(B) (stating that fees are only appropriate if a complainant has "substantially prevailed," and 5 U.S.C.A. § 552a(g)(3)(B) (same), it is implausible to assume that Congress accidentally omitted the "substantially prevail" language from subsection 552a(g)(4)(B). Instead, it must be viewed as an intentional congressional omission. *See Mallas v. United States*, 993 F.2d 1111, 1124 (4th Cir. 1993) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))(internal quotation marks and alterations omitted)).

IV.

The Government next contends that even if the district court was correct in concluding that the Government was liable to Doe for costs and reasonable attorney fees, the court abused its discretion and awarded Doe an unreasonable fee. We agree.

We review a district court's award of attorney fees for an abuse of discretion. *Johnson v. City of Aiken*, 278 F.3d 333, 336 (4th Cir. 2002). "In reviewing such discretionary rulings, we have adhered to the proposition that discretion has been abused if a court has failed adequately to consider judicially recognized factors constraining its exercise of discretion, or in relying on erroneous factual or legal premises." *Mid Atl. Med. Servs., LLC v. Sereboff*, 407 F.3d 212, 221 (2005) (internal quotation marks omitted). The Supreme Court has held that when fee-shifting statutes use similar language, they should be interpreted alike. *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 758 n.2 (1989). Moreover, the word "reasonable" is a term of art frequently used by Congress in fee-shifting statutes; accordingly, the Supreme Court's "case law construing what is a 'reasonable' fee applies uniformly to all [fee-shifting statutes]." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

The Government contends that because Doe sought money damages from the United States, and was awarded none, the only reasonable attorney fee is no fee at all.[16] Doe, on the other hand, counters by arguing that the real value and importance in his suit should not be measured by the monetary award, but instead by the declaratory and injunctive relief he obtained. Accordingly, he argues that his attorney fee award can be justified based on that relief.

We find Doe's argument unpersuasive. First, Doe did not win any declaratory or injunctive relief. While it is true that an injunction was entered prohibiting the Government from identifying black lung

---

[16]The district court did not consider Doe's underlying litigation success when it determined the reasonableness of his fee award. Instead, it moved directly to a straight-forward application of the twelve *Johnson* factors. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).

claimants' Social Security numbers in the future, Doe had no meaningful role in that injunction. The district court issued a consent decree on February 20, 1997, granting the injunctive relief. It was not until later that day that Doe joined the action, and he was not even a signatory to the decree. *See Doe IV*, 346 F.Supp. 2d at 842.

Second, and more importantly, subsection (g)(1)(D) of the Privacy Act does not allow courts to grant injunctive or declaratory relief. In fact, the only relief available to Doe under that subsection is monetary relief. *See Doe III*, 540 U.S. at 635 (Ginsburg, J., dissenting on other grounds ("It bears emphasis that the Privacy Act does not authorize injunctive relief when suit is maintained under § 552a(g)(1)(C) or (D).")); *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988) (holding that aside from two specific subsections, the Privacy Act "precludes other forms of declaratory and injunctive relief"); *Clarkson v. IRS*, 678 F.2d 1368, 1375 n.11 (11th Cir. 1982) ("The Privacy Act expressly provides for injunctive relief for only two types of agency misconduct, that is, wrongful withholding of documents under subsection (d)(1) and wrongful refusal to amend an individual's record under subsection (d)(3). The remedy for violations of all other provisions of the Act is limited to recovery of damages upon a showing that the agency acted in an intentional or willful manner.") (internal citation omitted); *Hanley v. United States Dep't of Justice*, 623 F.2d 1138, 1139 (6th Cir. 1980) (holding that "the injunctive relief sought by [the plaintiffs] is precluded under the Privacy Act by the failure of Congress to provide for such relief"); *Parks v. United States*, 618 F.2d 677, 684 (10th Cir. 1980) (same); *Cell Assoc., Inc. v. Nat'l Inst. of Health*, 579 F.2d 1155, 1159-60 (holding that the Privacy "Act makes no provision for [injunctive relief to prevent violations of subsection (b)] as part of the remedies that it does provide").[17] Even

---

[17]We note that we do not read these cases to stand for the proposition that the Government may not be enjoined from violating the Privacy Act by disclosing personal records. Instead, we read these cases as stating that such relief is not authorized by the Privacy Act, standing alone. Often, however, and as was the case in the instant action, injunctive relief for a Government's violation of the Act will instead be appropriate and authorized by the APA. *See* 5 U.S.C.A. § 706(2)(A) (West 1996) (empowering courts to "hold unlawful and set aside agency action . . . found to be . . . not in accordance with the law").

assuming, for the sake of argument, that Doe's suit obtained some declaratory or injunctive relief, such relief could not possibly have been obtained, standing alone, under the relevant subsections of the Privacy Act. Instead, any equitable relief obtained in the original action stemmed from the Administrative Procedures Act.[18] *See Doe III*, 540 U.S. at 619 n.1 ("Indeed, the District Court relied on the APA in determining that it had jurisdiction to enforce the stipulated order prohibiting the Department of Labor from using Social Security numbers in multiparty captions."). Simply put, because the Privacy Act does not allow Doe to obtain injunctive relief under subsections (g)(1)(C) or (D), it also bars Doe from securing an award of costs and fees based on any injunctive relief he actually obtained.

We therefore return to the question of whether Doe's fee award was reasonable in light of his failure to prove monetary damages. "Where recovery of private damages is the purpose of . . . litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Moreover, "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Accordingly, if "a plaintiff recovers only nominal damages . . . the only reasonable fee is usually no fee at all." *Farrar*, 506 U.S. at 115. Finally, and most importantly, when a district court determines what fee is reasonable, the "most critical factor" in that determination "is the degree of success obtained." *Hensley*, at 436.

The basis of Doe's suit under the Privacy Act was monetary damages. He sought damages for emotional distress, but as we concluded in *Doe II*, he failed to show any actual damages. Accordingly, the Government asks us to find that when a plaintiff fails to prove any actual damages in his quest for monetary relief under § 552a(g)(4),

---

[18]The APA does not itself allow for attorney fees, so any request for fees in connection with the APA must be made under the Equal Access to Justice Act, 28 U.S.C.A. § 2412(b) (West 1994). *See, e.g.*, *Ardestani v. INS*, 502 U.S. 129, 132-33 (1991) (explaining the relationship between the EAJA and APA). The district court determined that Doe was not entitled to fees under the EAJA, and Doe does not appeal that finding.

"the only reasonable fee is usually no fee at all." *Farrar*, 506 U.S. at 115.

The district court considered, but ultimately rejected this argument, finding that it was "nothing more than a restatement of the [Government's] previous argument that since [ ] Doe failed to recover actual damages . . . he is not entitled to an award of costs and attorneys' fees . . . ." *Doe IV*, 346 F.Supp. 2d at 848. The district court found that the Government's argument "reads 'reasonable' attorneys' fees as requiring that a party achieve some success on the merits before he can recover." *Id.* at 849. Thus, according to the district court, the Government's definition of the word "reasonable" impermissibly incorporates a "substantially prevail" requirement into the statute. *Id.*

We disagree with the district court. Statutes that require a complainant to "substantially prevail" in order to obtain costs and fees do so as a prerequisite to obtaining fees. *See Ruckelshaus*, 463 U.S. at 701 (noting that most fee-shifting statutes require that a party 'prevail' or 'substantially prevail' *in order to* obtain fees" (emphasis added)). That is to say, a party has no claim whatsoever to fees under such provisions — which are not implicated in this action — unless the party substantially prevailed in their underlying claim. *See, e.g.*, *Reinbold v. Evers*, 187 F.3d 348, 363 (4th Cir. 1999) (noting that the question of "whether a party who has substantially prevailed is *entitled* to recover attorneys' fees [ ] is not reached unless and until [the party] has proved he has substantially prevailed" (emphasis in original)). The word "reasonable," as it is used in fee-shifting statutes, such as the one here, however, has a distinct meaning, and it is only *after* a district court determines that it may award attorney fees that the word "reasonable" comes into play. *See Hensley*, 461 U.S. at 433 (stating that after a court determines that a party "prevailed" under the statute, "[i]t remains for the district court to determine what fee is 'reasonable'"). Put simply, "reasonableness" concerns the appropriate *amount of fees* once they are determined to be authorized, whereas whether a party "substantially prevails" concerns the appropriateness of awarding *fees at all*.

Thus, the district court erred in its reasonableness analysis by failing to "give primary consideration to the amount of damages awarded as compared to the amount sought" by Doe, a consideration that exists

in order to constrain a court's discretion in setting an award. *See Farrar*, 506 U.S. at 114. "Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Id.* (internal quotation marks omitted). Here, Doe failed to recover any monetary award, despite the fact that damages were the primary goal of his suit. Because his underlying litigation was largely unsuccessful, it is unlikely that Doe may recover significant attorney fees. *See Hetzel v. County of Prince William*, 89 F.3d 169, 173-74 (4th Cir. 1996) (holding that because the plaintiff "gained but an insignificant portion of the relief she originally requested and because she has failed to prevail on her most consequential claims, she is entitled only to a fraction of her attorney's fees").

Accordingly, because we find that the district court abused its discretion in determining the reasonableness of the fee award, we vacate the award and because the district court is in the best position to determine what is a "reasonable" attorney fee award, we remand to the district court for recalculation of fees.[19] We do not, however, disturb the district court's calculation of Buck Doe's litigation costs. Subsection (g)(4)(B) states that the Government shall be liable for "the costs of the action together with reasonable attorney fees." Doe is therefore entitled to the actual costs of his action unrestrained by any reasonableness inquiry.

## V.

In sum, we agree with the district court's interpretation of the Privacy Act. It plainly states that the Government shall be liable for costs and reasonable attorney fees when its intentional or willful violation of the Act adversely affects a litigant, and neither the Supreme Court's *Doe III* opinion nor canons of construction lead to an opposite conclusion. Because, however, the district court failed to determine the reasonableness of Doe's attorney fee award in light of the fact that Doe recovered no damages, we vacate that portion of the award per-

---

[19]In its recalculation, the district court should consider the *Johnson* factors on which it initially referenced in addition to the success obtained by Doe, including Doe's argument that his claim was partially vindicated, and that he is entitled to a substantial award under *Mercer v. Duke University*, 401 F.3d 199 (4th Cir. 2005).

taining to fees and remand to the district court for reconsideration. We affirm that portion of the award pertaining to costs.

*AFFIRMED IN PART; VACATED AND REMANDED IN PART*

MICHAEL, Circuit Judge, dissenting:

If this case had called for examination of the Privacy Act's text and nothing else, perhaps I would have subscribed to the majority's reading of the statute. The statutory text alone, however, cannot be the sole focus here because the Supreme Court has spoken, if not on the exact question posed, then at least on a subject very closely related. As a subordinate appellate court, our responsibility is to give effect to statutory text in a way that hews to Supreme Court guidance on how to interpret that text. Because I believe we must weigh the Supreme Court's words more heavily than does today's majority, I respectfully dissent. Although I concluded when this case was previously before us that Buck Doe had the better argument, here the government ought to carry the day. The Supreme Court's *Doe v. Chao* opinion virtually compels us to hold that a plaintiff who has not suffered actual damages under 5 U.S.C. § 552a(g)(4)(A) cannot allege all of the elements of a claim for relief under the Privacy Act and may not as a result recover costs or attorney fees under § 552a(g)(4)(B). Notwithstanding what the majority says, *ante* at 13-14 n.10, I am not attempting to rewrite the Privacy Act; I am simply following the Supreme Court's teachings on how to construe that Act.

I dissented in part from our earlier opinion because I disagreed with the conclusion that a plaintiff such as Buck Doe must suffer actual damages to be eligible for statutory damages under § 552a(g)(4)(A). *Doe v. Chao*, 306 F.3d 170, 187-203 (4th Cir. 2002) ("*Doe II*") (Michael, J., concurring in part and dissenting in part). The Supreme Court affirmed the result reached by the *Doe II* majority. *Doe v. Chao*, 540 U.S. 614, 627 (2004) ("*Doe III*"). In *Doe III* the Supreme Court suggested clearly how we should analyze eligibility for a recovery of costs and fees under § 552a(g)(4)(B), even though that fee provision was not then in dispute.

Specifically, Justice Souter wrote for the Court: "[A]n individual subjected to an adverse effect has injury enough to open the court-

house door, but without more has no cause of action for damages under the Privacy Act." 540 U.S. at 624-25. Further, in a footnote rejecting part of the reasoning in my *Doe II* dissent, the Supreme Court indicated that proper analysis of the statute — that is, analysis that correctly places "the horse" before "the cart" — would treat "damages as a recovery entitling a plaintiff to costs and fees." *Id.* at 625 n.9. Today's majority quotes these passages. *Ante* at 11-12; 9-10. Despite doing so, the majority fails to follow the path that the Supreme Court marked for us in its interpretation of the Privacy Act. I believe that path is clear. Since we must, so to speak, put the horse before the cart, damages must be a prerequisite to costs and fees. A plaintiff who has suffered no damages may have standing ("injury enough to open the courthouse door," *Doe III*, 540 U.S. at 625), but because such a plaintiff has no cause of action under the Act, he cannot be eligible for judicial relief, including attorney fees and costs.

The majority avoids confrontation with footnote 9 of *Doe III* by reading that footnote as pertaining only to Doe's § 552a(g)(4)(A) claim. *See ante* at 10 (asserting that "the Supreme Court did not attempt to address in dicta whether Doe was entitled to attorney fees"). This approach ignores the footnote's direct statement that "damages [are treated] as a recovery entitling a plaintiff to costs and fees." *Doe III*, 540 U.S. at 625 n.9. This statement was not crucial to *Doe III*'s holding, and it is dicta so far as Doe's claim for attorney fees is concerned. That does not end the analysis, however. We said long ago that "certainly dicta of the United States Supreme Court should be very persuasive." *Fouts v. Maryland Casualty Co.*, 30 F.2d 357, 359 (4th Cir. 1929). Moreover, "[c]ourts frequently and properly cite and rely upon dicta that correctly set forth governing or relevant legal principles." *New York Life Ins. Co. v. United States*, 118 F.3d 1553, 1557 (Fed. Cir. 1997). The question presented in *Doe III* did not have to involve attorney fees for the Supreme Court's *reasoning* on how to interpret the Privacy Act to be highly persuasive authority. This reasoning should guide us here.

I also take seriously the Supreme Court's lesson about the distinction between plaintiffs who have standing to sue and those who have a true cause of action under the Privacy Act. *Doe III*, 540 U.S. at 624-25. The majority attempts to sidestep this precept by emphasizing the differences between a cause of action and the relief that a plaintiff

who has a cause of action may recover. *Ante* at 12-13, 15 (quoting *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60 (1992), and *Davis v. Passman*, 442 U.S. 228 (1979)). The majority also criticizes the government for failing to appreciate these differences, *ante* at 15, but it is the majority that has missed the mark.

The Supreme Court has "often stated" that "the question of what remedies are available under a statute that provides a private right of action is 'analytically distinct' from the issue of whether such a right exists in the first place." *Franklin*, 503 U.S. at 65-66 (quoting *Davis*, 442 U.S. at 239). This sentence clarifies that *Davis*'s discussion of causes of action and appropriate relief arose in a particular legal context, namely the Supreme Court's jurisprudence on implied private rights of action. In that context, "it may be said that . . . *cause of action* is a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court; and *relief* is a question of the various remedies a federal court may make available." *Davis*, 442 U.S. at 239 n.18.

The relationship between that context and Doe's case is tangential at best, however, because Congress has *expressly* empowered plaintiffs to bring private suits for money damages under the Privacy Act. The phrase "cause of action" has long denoted more than one legal concept. In 1933 the Supreme Court, speaking through Justice Cardozo, explained that the Court "ha[d] not committed itself to the view that the phrase is susceptible of any single definition that will be independent of the context or of the relation to be governed." *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 68 (1933). In the years since the Court has continued to emphasize that the phrase's meaning depends on context. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 n.6 (1998) (Stevens, J., concurring) (indicating that *Davis* construed only "one meaning of the term."). A more careful examination should have led the majority to see that the legal concept at issue in *Davis*, a case assessing an implied right of action, was not the same as the concept at issue in *Doe III*, a case assessing the elements of an express statutory claim. Our task is simply to identify and apply the concept appropriate to this case.

Rather than look far afield to *Davis* and *Franklin* (again, cases concerning implied rights of action) to understand the Privacy Act "cause

of action," I would look principally to *Doe III* itself. Some causes of action do not require damages as an element of a claim for relief; others (such as the traditional tort of negligence) do. The Supreme Court taught us in *Doe III* that the Privacy Act cause of action is one of the latter. In particular, the Supreme Court found Doe's argument under § 552a(g)(4)(A) inconsistent with "the traditional understanding that tort recovery requires not only wrongful act plus causation reaching to the plaintiff, but proof of some harm for which damages can reasonably be assessed." *Doe III*, 540 U.S. at 621. It is not a coincidence that the treatise section that the Court cited to support this proposition is titled "Elements of Cause of Action." W. Keeton et al., *Prosser and Keeton on the Law of Torts* § 30 (5th ed. 1984). The treatise identifies "[a]ctual loss or damage resulting to the interests of another" as one of the traditional elements of a negligence cause of action, and adds: "Since the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of the plaintiff's case." *Id.*

The majority discusses *Doe III*'s invocation of the "traditional understanding" of tort causes of action only in an attempt to wave away this dissent. *Ante* at 9 n.6, 13-14 n.10. Thus, the majority neglects the role that this understanding played in the Supreme Court's analysis of the elements of a Privacy Act claim. Perhaps this neglect explains the majority's erroneous conclusion that "those litigants who are adversely affected by the Government's intentional or willful violation of the Privacy Act" have a "cause of action," *ante* at 14-15, regardless of whether they can allege any damages. This conclusion cannot be squared with the Supreme Court's statement that "an individual subjected to an adverse effect has injury enough to open the courthouse door, but without more has no *cause of action* for damages under the Privacy Act," *Doe III*, 540 U.S. at 624-25 (emphasis added), unless it is recognized that what the majority means by "cause of action" is not what the Supreme Court means. And without a cause of action in the Supreme Court's sense of that term, Doe would not be entitled to recover fees or costs because there would be no basis for holding the United States "liable" to Doe for any "sum." § 552a(g)(4). That is, there can be no liability absent a claim for relief, and no such claim absent actual damages.

To be sure, the practical impact of the majority's interpretive errors is somewhat blunted by its emphasis on the conventional judicial

standards for assessing the reasonableness of attorney fees. *See ante* at 21 (quoting *Farrar v. Hobby*, 506 U.S. 103 (1992)). I suppose that under these standards most victims who suffer no actual damages from a government official's "intentional or willful" violation of the Privacy Act will ordinarily recover no attorney fees. But outcome never trumps reasoning.

As I would reverse the district court's judgment for the reasons stated, I must respectfully dissent.